### MARSHALL v. MARSHALL et al.

Deed : FATHER TO SON : UNDUE INFLUENCE : RESCISSION. An aged
father, upon the loss of his wife, conveyed his farm and other prop-
erty to his son in consideration of a stipulated annuity and support
of himself and another for life. The contract was not unreason-
able in itself, and was not dictated by the son, and the evidence
failed to establish the claim that the father was incapacitated at the
time to make it. Neither was it shown that the son failed to per-
form his part of it in good faith. It appears, however, that there
was a conflict between the parties as to the quality of the support
which the son was furnishing, and the father soon left the son's
house and went to live with a daughter, but the other person who
was to be supported was satisfied, and remained with the son,
Held that the evidence did not warrant a rescission of the convey-
ance on the ground of incapacity, undue influence, and failure on
the son's part to perform the contract.

*Appeal from Delaware District Court.*—HON. CARL F.
COUCH, Judge.

FILED, SEPTEMBER 7, 1888.

ACTION in equity to set aside a conveyance of real
and personal property; and for other relief. The district
court rendered a decree setting aside the conveyance, as
prayed. The defendants appeal.

*Blair & Dunham*, for appellants.

*Bronson, Carr & Le Roy*, for appellee.

ROBINSON, J.—The defendants are husband and wife. The plaintiff is the father of the defendant John Marshall, Jr., and was seventy-five years old on the tenth day of January, 1886. About the twenty-seventh day of August, 1885, his wife died, and on the tenth day of the next month he executed the instrument in controversy. It conveyed to his son ninety-five acres of land, and a wagon and farm machinery. The value of all this property was about three thousand dollars, and the consideration for it named in the conveyance was an agreement on the part of the grantee to pay to the grantor one hundred dollars per year during his lifetime, and to "keep and support grantor, in addition to above sum, during his natural life, in a good and comfortable manner, giving him good food and shelter, and a good room in the new house." Also to "support and keep, during her natural life, one Anna Maria Ulrich, in a good and comfortable manner." Also to pay the sum of three hundred dollars to the daughters of the grantor, within two years after his death. After this instrument was executed the plaintiff and Mrs. Ulrich made their home with defendants until the latter part of December, 1885, when the plaintiff left, and made his home with a daughter. Mrs. Ulrich continued to reside with defendants. The plaintiff alleges that when said instrument was executed his mind was so impaired by the infirmities of age, physical debility, and grief at the loss of his wife, as to render him wholly incapable of managing his affairs ; that his son had managed his business and acted as his counselor ; and that the instrument was procured through the undue influence of the son and the mental incapacity of the plaintiff. He further alleges that the son has failed to perform on his part the requirements of said instrument ; that he failed to furnish plaintiff suitable food, and ill treated both plaintiff and Mrs. Ulrich.

I. The determination of this case depends chiefly upon questions of fact. There is much conflict in the evidence, but, after reading it with care, we have reached the conclusion that the preponderance is with appellants on all material issues. The transaction involved in this

case is, in its main features, not an uncommon one.  The father, made homeless by the death of his wife, and feeling the effects of age, sought to provide for himself, and for a dependent sister of his deceased wife, a home and the comforts of life during their remaining years, and for that purpose conveyed to the son substantially all his property.  The son accepted the trust, and undertook to discharge it.  As soon as the agreement was made, and its execution entered upon, the interests of the parties to it seemed to conflict. . It appeared to be to the interest of the father to obtain as much, and to the interest of the son to yield as little, as possible in carrying out the agreement.  When such an apparent conflict of interests exists, more than ordinary care is required to prevent jealousies and ill-will.  It often happens that interested relatives and others busy themselves in fomenting discord, and we think it is a matter of common knowledge that transactions of this character are rarely carried out to the full extent contemplated by the parties, without trouble of some kind.  But the fact that unpleasant results are apt to follow agreements of the kind in question affords no sufficient ground for setting them aside.  If they are entered into voluntarily by parties competent to contract, with knowledge of all material facts, and without fraud, they must be sustained.  In our opinion the plaintiff has failed to overcome the presumption which exists, in the first instance, that he was competent to contract, and that the instrument in question was his free and voluntary act, and valid.  Numerous witnesses, it is true, testify that he had not been considered capable of transacting business for years.  Most, if not all, of these are interested relatives.  As many or more witnesses testify that plaintiff was of sound mind, both before and after the death of his wife, and that he transacted business habitually.  These are chiefly disinterested witnesses, and their testimony seems to us to be the more credible.  The agreement itself, although possibly unwise, was not unnatural, and its terms are not such as to suggest unfairness.  At the time it was made, the plaintiff had one son, the defendant John, and five

daughters, all of whom were married. The son had worked at home until he was of age, and some of the evidence tends to show that plaintiff thought that he was justly entitled to more of the property than the daughters. Mrs. Ulrich was partially disabled from taking care of herself, and had been an invalid for years. The supporting of these two persons, and the payment of one hundred dollars each year, was certainly a considerable tax; and the length of time during which this would have to be done was necessarily uncertain. It seems to us that the agreement was in itself reasonable and just. It was drawn by one in whom plaintiff seems to have confidence, and who seems to be worthy of it. It was dictated by plaintiff, and carefully read and explained to him before he signed. The only suggestion made by the son while it was being prepared was that certain property which the father wished to be included should be omitted. The scrivener testifies that he had known plaintiff for ten or eleven years, and that at the time of executing the instrument the condition of his mind was good, and as clear as it used to be. We think the agreement must be sustained. *Gardner v. Lightfoot*, 71 Iowa, 577.

II. The evidence fails to show that the son violated the agreement. The only complaint made by plaintiff when he left the house of defendants was that he didn't like the coffee. It is shown that this was good. It is also shown that the treatment of both plaintiff and Mrs. Ulrich was good, and that Mrs. Ulrich was entirely satisfied. We conclude, therefore, that the decree of the district court must be

REVERSED.