In Re Estate of Sexton Mount.

Ella R. Wilkerson, Appellant, v. Wm. L. Long, Adminis-trator, et al., Appellees.

WILLS:  Equitable Conversion.  A will wherein testator, after mak-ing various devises to his children, directed that the "re-mainder" of his estate be *sold*, and the proceeds equally divided among his children, does not have the effect (because not so in-tended by testator) to convert into personalty, as of the date of the death of testator, a tract of land definitely devised to one of testator's sons "for life and after his death to his children," when the life devisee long survived the testator, and died without issue.

*Appeal from Jefferson District Court.*—C. W. Vermilion, Judge.

July 6, 1920.

The controversy herein involves certain probate pro-ceedings in the district court.  It involves the title to a certain 40-acre tract of land, which was devised by the will of Sexton Mount, probated in November, 1885.  An adminis-trator *de bonis non* of the estate of Sexton Mount was ap-pointed, upon the application of appellee Kurtz.  This pro-cedure was resisted by appellant, Wilkerson, upon grounds to be stated in the opinion.  The trial court confirmed the appointment, and authorized the administrator to proceed, pursuant to the provisions of the will.  Ella R. Wilkerson has appealed.—*Reversed and remanded.*

*Starr & Jordan,* for appellant.

*Eicher, Livingston & Eicher* and *E. F. Simmons,* for appellees.

EVANS, J.—Sexton Mount, then a widower, died testate, on or about November, 1885. He left surviving him three children as his sole heirs at law, and as his sole beneficiaries *in esse* of his will. These were John H. Mount, Ella R. Wilkerson, and Grace Mount Kurtz. Grace Mount Kurtz died testate in 1890, without issue, leaving John F. Kurtz, appellee herein, as her surviving husband. By Paragraphs 2, 3, and 4 of his will, the testator distributed several hundred acres of land with apparent approximate equality among his three children. Paragraphs 1, 5, 6, and 7 of said will were as follows:

"1. I give and devise unto my son John H. Mount the following described real estate situated in Jefferson County, Iowa, to wit: The northwest quarter of the northwest quarter of Section No. Three (3) in Township No. Seventythree (73) North of Range No. Eight (8) West, the said John II. Mount to have and to hold the said tract during his life, and after his death unto his children.

"5. I further give and bequeath unto my said daughter Grace Mount one pair of ponies and harness now claimed by her, one cow, and one bed and bedding, and the sum of one thousand dollars.

"6. I give and bequeath unto my son John H. Mount and my daughter Ella Wilkerson all the remainder of my household and kitchen furniture and all other personal property of every description, except my money, notes, mortgages, bonds, and other demands.

"7. And I further direct that the remainder of my estate both real and personal, shall be sold and the proceeds divided equally between my said children, after paying all debts and expenses, and said one thousand dollars herein devised unto my daughter Grace."

The estate of Sexton Mount was apparently fully administered under said will, and the executor discharged in 1887. The will of Grace Mount, who died .in 1890, be-

queathed all her personal property to her surviving husband, John F. Kurtz. John H. Mount died in December, 1917, never having had issue.

It will be noted that Paragraph 1 of the will of Sexton Mount devised a certain 40-acre tract to John H. Mount "for life, and after his death to his children." The death of John H. Mount terminated his estate, and left no taker of the fee. Thereupon, Kurtz asserted a right to an interest in the fee thus failing. The general theory upon which he based his claim was that the fee never left the estate of Sexton Mount, but always remained therein; that, by the failure of any taker under the will, it became absolute; that it fell into the residuary estate, and passed to the three children of Sexton Mount by Paragraph 7 of his will; that, by the same Paragraph 7, the land was converted into personalty, under the doctrine of equitable conversion; that, as such personalty, it passed to him under the will of Grace Mount, whereby all her personalty was bequeathed to him. By application to the clerk in vacation, he obtained the appointment of an administrator *de bonis non* of the estate of Sexton Mount. In the first term of court following, Ella Wilkerson, appellant, filed an application to set aside such appointment. At the same time, the administrator *de bonis non* presented an application for an order to sell the real estate, under the purported direction of Paragraph 7 of the will. This application was resisted by Wilkerson, on the same ground as her application to set aside the appointment. The general ground was that Kurtz had no interest in the title to such 40-acre tract, and that, in any event, it was not personalty, and not subject to administration. By agreement, both applications were heard together, with the result that the administrator was authorized to sell the property, and to distribute the same in accordance with the contention of Kurtz.

It will be seen from the foregoing that the claim of Kurtz rests upon two general propositions: (1) That his wife, at the time of her death, had such a property interest in the tract as was devisable or assignable; (2) that the

provisions of Paragraph 7 of the will of Sexton Mount had, before the death of Grace Mount, worked an equitable conversion of such property interest into personalty, whereby it passed to Kurtz, under the will of Grace Mount. This will bequeathed to him personalty only. It is essential to the case of Kurtz that both of such propositions be sustained. The failure of either would be fatal to him in this proceeding.

In support of the first proposition, the general argumen for Kurtz is that Paragraph 1 of the will devised a contingent remainder to the children of John H. Mount; that, inasmuch as there was no taker *in esse,* the fee remained in the residuary estate of the testator, and so continued, subject to the condition subsequent that a child should be born to John H. Mount; that, by Paragraph 7, such remainder in fee passed to the three children of Sexton Mount, subject to such condition, and became absolute through the death of John H. Mount without issue having been born. It is also argued that the devise to the children of John H. Mount lapsed, and that, therefore, the remainder in fee became a part of the residuary estate, and passed under Paragraph 7.

The argument for Wilkerson is that the full title to the 40-acre tract was devised to John H. Mount for life, and to his children after his death; that, though the devised remainder in fee was contingent, both in event and in person, yet, under the rule of common law, it was effective to carry the full fee title, and that nothing remained to the estate but a "possibility of reverter;" that such "possibility of reverter" was not a present property interest, and was not assignable or devisable; that, upon the final failure of the possibility of children to John H. Mount, the fee did revert, as of the time of such failure, to the heirs of the testator, and to Ella Wilkerson, as the only surviving heir; that, consequently, there was no property interest in Grace Mount, at the time of her death, which could pass by her will, or to which her surviving husband could succeed. It

is further argued, as to the second proposition above stated, that, whatever the property right, it was *land,* and not *personalty;* that there was no equitable conversion, and could not be during the life of John H. Mount, who long survived Grace Mount; and that the direction of sale contained in Paragraph 7 of the will was not intended to apply to the property in question.

The first proposition above stated as essential to the case of Kurtz is involved in the confusion of varying statutes and conflicting authorities. The trial court found it a question of great difficulty, and we so find it. We find little difficulty, however, in dealing with the second question; and, inasmuch as our conclusion thereon becomes decisive of this proceeding, we give it first consideration.

Did Paragraph 7 of the will work an equitable conversion of this land into personalty as of a date prior to the death of Grace Mount?

An imperative and absolute direction in a will that land be sold, and the proceeds thereof distributed, works an equitable conversion of the land into personalty, as of the date of the death of the testator. *Inghram v. Chandler,* 179 Iowa 304, and cases cited therein. For the purpose of this case, we may assume, also, that a *conditional* direction to sell land upon the happening of some future and uncertain event will also work an equitable conversion, as of the date of the happening of such event.

The direction to sell, contained in Paragraph 7, is absolute and direct, and was sufficient in form to work an equitable conversion of land into personalty, as of the date of the death of the testator. If, therefore, upon a consideration of the entire will, it can fairly be said that Paragraph 7 of the will was by the testator intended to apply to this land, then argument is closed.

We must look to the will in its entirety, to ascertain the intent of the testator. Paragraphs 1, 2, 3, and 4 of the will purport to be absolute devises of specific real estate. Presumptively, therefore, the testator did not intend, by Paragraph 7, any reference to such specific property so

devised. Looking to the will alone, there is nothing therein to indicate the contingent character of the remainder in fee, given by Paragraph 1 to the children of John H. Mount. Looking beyond the will to the circumstances surrounding the testator at the time of the making of the will and at the time of his death, with reference to which the will must be deemed to speak, it is made to appear that John H. Mount, at the time of the death of the testator, had no children, and was unmarried. Such fact was presumably known to the testator. Construing Paragraph 7 in the light of this fact, can it be said that it was the intent of the testator to direct the immediate sale of the land which had been devised in Paragraph 1 to the unborn children of John? To so hold would be to put Paragraph 7 in conflict with Paragraph 1. The direction of Paragraph 7 was absolute as to its subject-matter, and required an immediate sale thereof, and thereby worked an equitable conversion thereof, as of the date, of the death of the testator. It is clear, therefore, that both of these paragraphs cannot be put into effect acording to their strict terms, if the subject-matter of Paragraph 7 be deemed to include the subject-matter of Paragraph 1.

Kurtz does not contend, in argument, that it was the duty of the executor, under Paragraph 7, to sell the 40-acre tract in question at any time except in the event of the death of John H. Mount without issue. This argument would reduce the direction contained in Paragraph 7 to a *conditional* one, though it is not such in terms. This is only saying that a conditional direction could have been made in Paragraph 7, consistent with Paragraph 1. But will the terms of Paragraph 7 bear such a construction? If Paragraph 7 had been, in terms, conditionally qualified in the respects stated, it could have been made consistent with Paragraph 1. In that event, however, such a conditional direction would work an equitable conversion, as of the time of the happening of such condition, and not as of the date of the death of the testator. *Inghram v. Chandler*, supra. Such condition had not happened at the time of the

death of Grace Mount, and there was, therefore, no equitable conversion at the time of her death. In order to convert this property into personalty, and thereby to bring the same within the scope of the bequest to Kurtz in the will of Grace Mount Kurtz, it was necessary that the direction in Paragraph 7 should be deemed immediately operative.

There is a further feature of Paragraph 7 which has its influence upon the result. It contains no direct residuary bequest. A bequest will be implied, as a matter of law, from the direction therein to sell and to distribute. In such a case, it is well settled that the implied bequest will not vest in the beneficiary unless the direction to sell is absolute, or, if conditioned upon a future event, until the happening of such future event. If, therefore, Paragraph 7 should be construed as casting upon the executor the duty to sell this property only in the event that John H. Mount should die without issue, then nothing vested in the beneficiaries, under Paragraph 7, as to this 40-acre tract, until the death of John H. Mount. See *Fulton v. Fulton*, 179 Iowa 948, and cases therein cited.

It is to be noted further that Paragraph 7, not only in strict terms directed a present and immediate sale of its subject-matter, but it directed also that the proceeds thereof should be divided between "my said children." John H. Mount was one of the beneficiaries of such proceeds. If there was to be no sale, and therefore no proceeds, until after the death of John H. Mount without issue, the testator could not have contemplated a distribution of proceeds to him after such event.

We do not overlook the argument for Kurtz that Paragraph 7 carried to the beneficiaries, not the body of the gift as respects this land, but a certain incorporeal interest in the fee which remained in the estate of Sexton Mount, by reason of the uncertainty that any taker of the fee under Paragraph 1 should ever be born. It is this incorporeal thing that is claimed to have vested in the beneficiaries under Paragraph 7. If this argument were conceded, it

would still be an interest in realty, and not personalty. To say that, under Paragraph 7, the testator intended that this incorporeal interest should be sold, and the proceeds thereof distributed to his three children, including the life tenant, would be only to becloud the absolute title which he had devised in terms under Paragraph 1. If such a provision had been included in express terms in Paragraph 7, it would have been at least an incongruous one.

It is also argued for Kurtz that the failure of the devise of the remainder under Paragraph 1, by the death of John H. Mount without issue, was the equivalent of a lapsed devise, and that such lapsed devise fell, as a matter of law, into the residuary estate. If that were conceded, yet the lapse did not occur until the death of John H. Mount without issue. It had not occurred at the time of the death of Grace Mount. It could not, therefore, have passed under her will.

Taking the will by its four corners, therefore, and construing it in the light of the circumstances under which it was to go into effect, we are clear that Paragraph 7 was not intended to operate upon the property described in Paragraph 1.

This conclusion renders it unnecessary that we should consider the question whether any incorporeal interest which might remain in the estate of Sexton Mount until a taker should come into being would pass at all, under a general residuary clause. At common law, it would not. The result of our conclusion is that Kurtz was not entitled to the appointment of an administrator *de bonis non*, in that the property in question was not personalty, within the provision of the will of Grace Mount Kurtz. This is a vital issue in this particular proceeding, and we have no occasion to go further than this narrow issue, as made by the pleadings and the procedure. For the reason indicated, the order of the trial court will be reversed, with direction to set aside the order of appointment of the administrator and the order of sale.—*Reversed and remanded.*

Weaver, C. J., Preston and Salinger, JJ., concur.