Harold D. PORTER, James E. Porter and Donna C. Bingham, Appellees,

v.

Sena C. PORTER, Wayne E. Nelson, Appellant;

and Ramsey Memorial Home.

No. 62314.

Supreme Court of Iowa.

Dec. 19, 1979.

Gene L. Needles of Zohn & Needles, Des Moines, for appellant.

Jeff H. Jeffries of Hopkins & Huebner, Des Moines, for appellees.

Considered en banc.

ALLBEE, Justice.

This is a will contest, brought by testator Corwin E. Porter's natural children, Harold D. Porter, James E. Porter and Donna C. Bingham. Defendant Wayne E. Nelson[1] is one of the named beneficiaries under the will.

Pertinent parts of the contested will follow:

## ARTICLE I

In the event my wife, Sena C. Porter, survives me, I hereby give all of my property, real and personal, to her absolutely.

## ARTICLE II

If my wife, Sena C. Porter, shall predecease me, then and in that event I give all my property, real and personal, to my son-in-law,[2] Wayne E. Nelson, or his heirs, share and share alike.

## ARTICLE III

In the event that my son-in-law, Wayne E. Nelson, shall predecease me and leave no heirs, then and in that event I give all my property, real and personal to the Ramsey Memorial Home of Des Moines, Iowa, absolutely.

. . . . .

## ARTICLE VI

I am aware that this Will neglects to mention my children, Harold, James and Donna, and it is my desire to leave my estate as set out above and not to my children.

Testator executed the contested will on December 14, 1973. On December 7, 1976, the marriage between testator and Sena was dissolved by decree. Without having revoked or modified his will, testator died on July 1, 1977. Both Sena and defendant survived him.

After the will was filed for probate, plaintiffs filed a petition to have the will set aside and the estate pass by intestate succession. They alleged that the dissolution in effect revoked all provisions in the will in favor of Sena because of the operation of section 633.271, The Code. That section provides, in part: "If after making a will the testator is divorced or the marriage is dissolved, all provisions in the will in favor of the testator's spouse are thereby revoked."

---

1. The original petition also named Sena C. Porter and the Ramsey Memorial Home as defendants and proponents of the will. Subsequently, trial court rendered a default judgment against Sena for failure to comply with an order compelling discovery. Of the two remaining defendants, only Wayne Nelson appealed trial court's ruling on the motion here at issue.

2. Although the will refers to defendant as testator's son-in-law, he was in fact the son of Sena by a prior marriage and thus testator's stepson.

This misdescription of testator's relationship to defendant does not invalidate the gift over because the designation by name shows testator's intent beyond reasonable dispute. *See Hollenbeck v. Gray,* 185 N.W.2d 767, 770–71 (Iowa 1971); *In re Estate of Brown,* 139 Iowa 219, 223, 117 N.W. 260, 262 (1908). *See also Barnstable v. United States Nat'l Bank,* 232 Or. 36, 38–42, 374 P.2d 386, 387–89 (1962) (en banc) (adopted daughter referred to as "foster daughter").

The petition also stated that the bequest to defendant must fail either because it should be considered a gift "in favor of" Sena or because it was conditioned upon an event which had not occurred, that is, Sena's predeceasing testator. Finally, it alleged that at the time of executing the will testator was of unsound mind and unduly influenced by Sena.

Subsequently, plaintiffs filed an application for an adjudication of law points under Iowa R.Civ.P. 105, asking whether defendant was entitled to take under the terms of the will.[3] Trial court ruled that the gift over to defendant failed and that the estate passed by intestacy. Its rationale was that the death of the spouse prior to that of testator was a necessary condition precedent to effectuation of the gift over.

Defendant was granted permission to appeal that ruling in advance of judgment, pursuant to Iowa R.App.P. 2. The court of appeals reversed, holding that in this case testator's estate passed as if the former spouse had failed to survive testator. That court reasoned that testator's unmistakable intent was to disinherit his three natural children and leave the estate to others. This was evidenced, it said, by Article III, which named an alternative contingent beneficiary other than testator's natural children, and by Article VI, which specifically disinherited his natural children. We subsequently granted plaintiffs' application for further review of the decision of the court of appeals and now affirm that decision.

This appeal presents a narrow issue of first impression: the proper construction of a gift over made contingent upon the death of the spouse when the spouse, who is divorced from the testator after execution of the will, survives the testator but is barred from taking under the will by operation of section 633.271.

Because the answer to this question lies in a determination of the testator's intent, which is the guiding light in will interpretation, *Covert v. Sebern,* 73 Iowa 564, 566–67, 35 N.W. 636, 638 (1887), no blanket rule of construction is appropriate. While technical rules of construction may be employed if the will is ambiguous or testator's intent is for any other reason uncertain, *In re Estate of Kalouse,* 282 N.W.2d 98, 100 (Iowa 1979), such is not the case here. Consequently, we need not attempt to now formulate, by way of dictum, a rule of construction for cases in which this issue is involved but the testator's intent is not clearly evidenced.

The testator's intent is to be determined by examination of the whole will. As stated in *Elkader Production Credit Association v. Eulberg,* 251 N.W.2d 234, 237–38 (Iowa 1977),

> [A] testator's intent is not to be ascertained from a single part or paragraph o[f] his or her will. That means the instrument must be read and considered as a whole, each part in connection with every other part and with the entire will, with each part given meaning and effect if possible.

Concomitant to an examination of the whole will and also helpful in gleaning the testator's intent is an examination of the scheme of distribution. Additionally relevant to ascertaining the testator's intent are the circumstances surrounding him at the time he made his will and the existing facts. *See, e. g., In re Estate of Lamp,* 172 N.W.2d 254, 257 (Iowa 1969).

Applying these principles of interpretation to the will before us, we conclude that testator intended that his estate should devolve upon defendant if testator's former spouse for any reason could not take under the will. Any indefiniteness regarding testator's intent in including the condition of his wife's predeceasing him in his will is

---

**3.** Rule 105 was an appropriate vehicle for plaintiffs' question because it sought a determination of the legal effect of certain uncontroverted pleadings. *See M & W Farm Service Co. v. Callison,* 285 N.W.2d 271, 274 (Iowa 1979). The facts settled by the pleadings were the contents of the will, which had been incorporated into the pleadings; that the dissolution occurred at a time subsequent to the making of the will but prior to testator's death; and that both Sena and defendant survived testator.

clarified by the remaining provisions of the will. The whole will evinces a scheme of distribution to prefer testator's wife first, his stepson second and the Ramsey Memorial Home third. Testator's natural children not only were excluded inferentially by the fact that testator specified three alternative beneficiaries in preference to them but also explicitly in Article VI, which provides, "it is my desire to leave my estate as set out above and not to my children." To interpret the condition of his wife's predeceasing him strictly would defy the remaining provisions of the will and testator's obvious plan of distribution. To interpret it rather as a means of indicating his order of preference for beneficiaries and of preventing lapse of his bequests gives harmonious meaning to all provisions of the will.

Moreover, this court has previously favored the interpretation of conditions which avoids forfeiture and permits the bequests. *See In re Estate of Anderson,* 244 Iowa 325, 331–32, 56 N.W.2d 913, 917 (1953); *In re Estate of Nugen,* 223 Iowa 428, 435, 272 N.W. 638, 642 (1937) ("As between contingent and vested estates, conditions precedent and conditions subsequent, forfeitable rights and nonforfeitable rights, the courts always incline to the latter whenever it can fairly be done without violence to the language of the instrument under which the claims of the parties are asserted."); 5 W. Bowe & D. Parker, *Page on the Law of Wills* § 44.3, at 401 (rev. 1962) ("[W]here there is a condition precedent the happening of which would create an estate without divesting another it may be construed liberally in favor of the beneficiary.").

■ Our interpretation of the will's condition in this case is also consistent with other principles of construction recognized by previous decisions of this court. One is that substantial performance of a condition in a will is sufficient to vest an interest in property if intestacy would result from a more literal interpretation. *See, e. g., Livingston v. Lenox College,* 192 Iowa 579, 185 N.W. 122 (1921) (condition that devise vest if college raise $25,000 within certain time period fulfilled by obtaining subscriptions

for that amount, payable at a time later than the prescribed period). Another principle is that the time of death required to meet a condition to a bequest of another beneficiary's death is normally construed as being prior to the testator's death. *See, e. g., Shoberg v. Rock,* 230 Iowa 807, 810, 298 N.W. 838, 839 (1941). This may be explained by a preference for interpreting the survivorship clause as a direction for substitution to prevent lapse rather than as a condition. 5 W. Bowe & D. Parker, *supra* § 44.14, at 430. Yet another, and more general, principle is that a will must be read, if possible, so as to avoid intestacy. *See, e. g., In re Estate of Lamp,* 172 N.W.2d at 257, 258–59.

Our conclusion is also supported by the majority of decisions from other jurisdictions which have considered the issue. Most of those jurisdictions also base their interpretation of similar will provisions on a determination of the testator's intent. *See, e. g., In re Estate of Fredericks,* 311 So.2d 376, 379 (Fla.Dist.Ct.App.1975); *Steele v. Chase,* 151 Ind.App. 600, 606–07, 281 N.E.2d 137, 140 (1972); *Russell v. Estate of Russell,* 216 Kan. 730, 734, 534 P.2d 261, 265 (1975); *Calloway v. Estate of Gasser,* 558 S.W.2d 571, 574–76 (Tex.Civ.App.1977); *cf. First Church of Christ, Scientist v. Watson,* 286 Ala. 270, 273, 239 So.2d 194, 196 (1970) (presuming spouse's civil death unless a contrary intention is apparent from the will); *In re Estate of Zimmerman,* 28 Ill.App.3d 107, 109, 328 N.E.2d 199, 200 (1975); *In re Estate of Lampshire,* 57 Misc.2d 332, 334, 292 N.Y.S.2d 578, 580–81 (Sur.Ct.1968); *In re Estate of McLaughlin,* 11 Wash.App. 320, 322–23, 523 P.2d 437, 438–39 (1974) (declaring testator's intent unexpressed and thus unfathomable as to effect of dissolution upon terms of will). Significantly, in the two cases where the testator had specified in his will that his natural heirs were to receive nothing or a nominal amount, it was held that the testator's clear intention was to dispose of his property according to his will rather than the laws of intestate succession. *See Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975); *Peiffer v. Old National Bank & Union Trust Co.,*

166 Wash. 1, 6 P.2d 386 (1931). Even wills without an explicit disinheritance clause have been interpreted by the majority of jurisdictions to demonstrate testamentary intent to uphold the gift over. *See In re Estate of Fredericks,* 311 So.2d 376 (Fla. Dist.Ct.App.1975); *Steele v. Chase,* 151 Ind. App. 600, 281 N.E.2d 137 (1972); *Calloway v. Estate of Gasser,* 558 S.W.2d 571 (Tex. Civ.App.1977). *But see In re Estate of McLaughlin,* 11 Wash.App. at 322, 523 P.2d at 438 (finding dispositive, and the basis for distinguishing *Peiffer,* the absence of a disinheritance clause). *See generally* Annot., 74 A.L.R.3d 1108 (1976).

Plaintiffs make a number of arguments on behalf of revoking the gift over to defendant. First, they contend that the will must be construed as written and that in construing a will the question is not what the testator may have meant, but what the meaning is of the words actually used.

While this court has recognized the importance of the requirement of written expression of the testator's intent by the above rules, *see, e. g., In re Estate of Fairley,* 159 N.W.2d 286, 288–91 (Iowa 1968), we have also recognized that in order to give proper respect to the testator's intent a court may determine that the testator made a gift "by necessary implication" from his will, *id.* at 289 (quoting dictum from *Bankers Trust Co. v. Allen,* 257 Iowa 938, 945, 135 N.W.2d 607, 611 (1965)); *In re Estate of Loranz,* 256 Iowa 818, 820, 128 N.W.2d 224, 225 (1964) (permitting beneficiary of bequest of property "that has not been specifically devised or bequeathed" to receive renounced legacy); *In re Estate of Mount,* 189 Iowa 279, 285, 178 N.W. 391, 393 (1920) ("A bequest will be implied, as a matter of law, from the direction therein to sell and distribute."); *Vorse v. Vorse,* 186 Iowa 1091, 1092–97, 171 N.W. 186, 186–88 (1919) (will bequeathing "entire estate" to two sons and stating testator's desire that wife be paid "good and reasonable support" implied that sons' devise was subject to duty to support mother); *cf. In re Estate of Spencer,* 232 N.W.2d 491, 498 (Iowa 1975) (implied gift theory used when there is a default in the exercise of a special power of appointment). *See also In re Estate of Beaver,* 206 N.W.2d 692, 696 (Iowa 1973) (in case of impossibility of performance by beneficiary of will, permitting the court to inquire, "not as to what the conveyor actually intended, but as to what his intent would have been had he known of or anticipated the impossibility at the time he imposed the restraint") (quoting Restatement of Property § 438, Comment c (1944)).

The doctrine of gift by implication has been described more fully by other jurisdictions that have had occasion to apply it. For example, *Davis v. Davis,* 24 Ohio Misc. 17, 24, 258 N.E.2d 277, 282 (Ct.C.P.1970), explains:

> When a testator's will clearly reveals a general plan or intention as to the disposition of his property, and a situation arises that is not within the express language of the will, such general plan may be regarded as existing but incompletely expressed, and the failure to provide for the situation inadvertent rather than intentional, and a gift may be implied for the purpose of completing the general plan.

*Accord, In re Estate of Cummings,* 263 Cal. App.2d 661, 666–67, 69 Cal.Rptr. 792, 796 (1968); *In re Will of McDowell,* 81 N.M. 562, 564, 469 P.2d 711, 713 (1970); *In re Estate of D'Alessandro,* 55 Misc.2d 909, 911–15, 286 N.Y.S.2d 914, 917–20 (Sur.Ct. 1968); *In re Estate of Lull,* 120 Vt. 195, 200, 138 A.2d 615, 619 (1958). *See generally* 4 W. Bowe & D. Parker, *supra* § 30.18; 95 C.J.S. *Wills* § 595 (1957).

This well-established doctrine is particularly appropriate in situations where the testator bequeaths property in contemplation of one contingency and then another contingency occurs which was not provided for in the will. Depending on the particular facts of the case, the testator's disposing intent may be implied with regard to the unmentioned contingency. *See, e. g., Fay v. Fay,* 334 Mass. 311, 319–21, 135 N.E.2d 306, 311–12 (1956); *In re Estate of Thall,* 18 N.Y.2d 186, 192–94, 273 N.Y.S.2d 33, 36–37, 219 N.E.2d 397, 399 (1966); *In re Estate of*

*McWilliams,* 78 Wis.2d 328, 334–35, 254 N.W.2d 277, 280–81 (1977). *See generally* 80 Am.Jur.2d *Wills* §§ 1385, 1390, 1391 (1975). The probability of the implication is usually required to be so strong that a contrary intention cannot be supposed; conjecture will not support an implied gift. *See, e. g., Ravenel v. Shipman,* 271 N.C. 193, 196, 155 S.E.2d 484, 486–87 (1967); *Najvar v. Vasek,* 564 S.W.2d 202, 210 (Tex.Civ.App. 1978); *Seattle-First National Bank v. Tingley,* 22 Wash.App. 258, 263, 589 P.2d 811, 814 (1978). This is traditionally referred to as Lord Eldon's Rule, announced in *Wilkinson v. Adam,* 35 Eng.Rep. 163, 180 (Ch. 1812). *Cf. In re Estate of Fairley,* 159 N.W.2d at 288–89 (logical speculation on testator's intent generally insufficient for will construction). *But see* Clapp, *Justice Nathan L. Jacobs—The Doctrine of Probable Intent,* 28 Rutgers L.Rev. 251 (1975) (indicating that New Jersey courts are applying less rigorous standard than Lord Eldon's Rule).

■ The doctrine of gift by implication is fully applicable here. Testator's will set forth a complete scheme of distribution, indicating that his intent to bequeath property to defendant extended not only to the contingency accounted for in the will, Sena's predeceasing testator, but also to the contingency which actually occurred, the dissolution and revocation by law of Sena's bequest. In view of the whole will, especially the disinheritance clause, a contrary intention cannot be realistically supposed.

Nonetheless, plaintiffs argue that the gift by implication doctrine is inappropriate in this situation, citing *Davis v. Davis,* 24 Ohio Misc. at 25–26, 258 N.E.2d at 283. The *Davis* court reasoned that the testator's general testamentary plan had been grossly distorted by the separation agreement, divorce and revocation by law of the wife's bequest, thus destroying the basis for a gift by implication.

■ While *Davis* is distinguishable because the will there included no clause disinheriting the testator's heirs, we also believe its rationale is overbroad. There is no reason to assume that in all or even most

cases a testator estranged from his spouse will also be estranged from alternative beneficiaries under the will, even if they are relatives of that spouse. The results of other jurisdictions considering the validity of gifts over to testators' stepchildren are divided. *Compare Lamontagne v. Hunter,* 341 So.2d 1074 (Fla.Dist.Ct.App.1977), *and Russell v. Estate of Russell,* 216 Kan. 730, 534 P.2d 261 (1975) (upholding gifts over to stepchildren), *with In re Will of Lampshire,* 57 Misc.2d 332, 292 N.Y.S.2d 578 (Sur.Ct. 1968), *and In re Estate of McLaughlin,* 11 Wash.App. 320, 523 P.2d 437 (1974) (revoking gifts over to stepchildren). We concur with the recognition in *Steele v. Chase,* 151 Ind.App. 600, 607, 281 N.E.2d 137, 140–41 (1972), that "in certain circumstances a relative of a divorced spouse may receive a greater devise than the heirs at law, yet a court may not speculate as to what decedent's intentions may have been and thus rewrite his will."

■ Also, to interpret section 633.-271 as *Davis* advises would violate the rule that statutes will not be construed as taking away common law rights existing at the time of enactment unless that result is imperatively required. *Jansen v. Harmon,* 164 N.W.2d 323, 328 (Iowa 1969); *see In re Estate of Brown,* 139 Iowa 219, 223, 117 N.W. 260, 262 (1908) (prior to statute, no implied revocation of testamentary disposition to prior spouse resulted from divorce). Section 633.271 is directed only toward bequests to the testator's divorced spouse, not other objects of his bounty as well. *Cf. Todora v. Todora,* 92 Nev. 566, 568, 554 P.2d 738, 739–40 (1976) (per curiam) (refusing to revoke appointment in will of divorced spouse as executrix under similar state statute).

■ Next, plaintiffs urge that when construction of a will is required, a construction is favored which most nearly brings the bequest in conformity with laws of descent and distribution. This is a valid rule of construction. *See, e. g., Watson v. Manley,* 257 Iowa 92, 97, 130 N.W.2d 693, 696 (1964). However, rules of construction

are subservient to the testator's written expression for ascertaining his intent. Here, testator clearly indicated that he did not intend his natural heirs to take when he expressly so stated in his will. Such disinheritance clauses are operative where, as in this case, valid disposition is made of testator's property. *Elkader Production Credit Association v. Eulberg*, 251 N.W.2d at 238–39; *see In re Estate of Lamp*, 172 N.W.2d at 259.

 Finally, plaintiffs argue that upholding the gift over would violate legislative intent because the legislature did not elect, in section 633.271, to deem the divorced spouse civilly dead, as did Uniform Probate Code § 2–508 and statutes modeled after that provision. *See In re Will of Lampshire*, 57 Misc.2d at 333–34, 292 N.Y. S.2d at 579–80. We discern no clear legislative intent with regard to this issue.[4] Moreover, we do not here attempt to fill the legislative gap with a comprehensive rule of construction. Our decisions will continue to be based on a determination of the testator's intent, if demonstrable, in each particular case.

Although we affirm the court of appeals' decision, reversing trial court's ruling that the gift over fails under the terms of the will, the case must be remanded for trial of plaintiffs' other grounds for contesting the will: that testator was of unsound mind and unduly influenced in making his will.

DECISION OF COURT OF APPEALS AFFIRMED AND CASE REMANDED.

All Justices concur except REYNOLD-SON, C. J., McGIVERIN, REES and HAR-RIS, JJ., who dissent.

McGIVERIN, Justice (dissenting).

Being unable to agree with the result reached by the majority, I respectfully dissent.

Section 633.271, The Code, provides in part: "If after making a will the testator is divorced or the marriage is dissolved, all provisions in the will in favor of the testator's spouse are thereby revoked."

Corwin E. Porter's will provided in pertinent part:

### Article I

In the event my wife, Sena C. Porter, survives me, I hereby give all my property, real and personal, to her absolutely.

### Article II

If my wife, Sena C. Porter, shall predecease me, then and in that event I give all my property, real and personal to my [step son], Wayne E. Nelson, or his heirs, share and share alike.

Other will clauses made an alternative gift in the event Wayne Nelson predeceased Corwin and expressed an intent not to leave property to Corwin's children.

Due to section 633.271, the gift to Sena under Article I is revoked.

Next in seeking to determine the effect of the will, we must consider Article II, by which Corwin established a condition precedent, that Sena predecease Corwin, before any gift went to his former stepson, Wayne Nelson.

The marriage of Corwin and Sena was dissolved on December 7, 1976. Corwin had time to change or update his will to meet current circumstances, if he so chose, before he died on July 1, 1977, but he did not.

The real issue here is, where a contingent bequest to the testator's stepson is conditioned upon the spouse predeceasing the testator, does the contingent bequest fail where the former spouse survived the testator? I believe it does.

To answer the question otherwise forces us into one of two choices: (1) to ignore the condition precedent placed in the will by

4. Because § 633.271 was passed by the legislature in 1963, *see* 60th G.A., ch. 326, § 271, and the UPC was not approved by the National Conference of Commissioners on Uniform State Laws and by the American Bar Association until 1969, *Foreward* to Uniform Probate Code at III, the UPC provision was not available for consideration by the drafters of § 633.-271. A comment to the original bill, 60th G.A., S.F. 165, § 271, states only that it was adapted from § 53 of the Model Probate Code.

Corwin; or (2) to say the condition was satisfied by the "civil death" of Sena for the purposes of Corwin's will due to the marriage dissolution and the effect of section 633.271.

We cannot ignore the condition precedent.

I recognize there appears to be a split of authorities on the question posed. The cases are collected at Annot., 74 A.L.R.3d 1108, 1113–23 (1976).

However, two cases are very close on the facts and statutes involved to the present situation. In *In re Estate of McLaughlin*, 11 Wash.App. 320, 523 P.2d 437 (1974) the testator bequeathed all his property to his "wife"; provided, however, that "if she predeceased me," everything went to his wife's son, the testator's stepson. Approximately four months prior to testator's death, he and his wife were divorced and she survived him. Washington had a statute (RCW 11.-12.050) which revoked the will as to the divorced spouse. The issue, as here, was whether the contingent bequest to the stepson should take effect. The Washington Court of Appeals held it should not.

> Our holding that [testator's stepson] is entitled to nothing under the will is based upon the fact that the alternative bequest to him in the will was conditional, i. e., by the terms of the will he takes only if the ex-wife predeceases the decedent. Since the ex-wife survived the decedent, the bequest fails, leaving the decedent's estate to pass via the laws of intestate succession.

11 Wash.App. at 321, 523 P.2d at 438.

Similarly, in *In re Estate of Lampshire*, 57 Misc.2d 332, 292 N.Y.S.2d 578 (Sur.Ct. 1968) the statute, facts and will provision were also similar to our situation. The New York court referred to a Missouri statute (V.A.M.S. Section 474.420), which provided:

> If after making a will testator is divorced, all provisions in the will in favor of the testator's spouse so divorced are thereby revoked but the effect of the revocation shall be the same as if the

divorced spouse has died at the time of the divorce. . . .

57 Misc.2d at 333, 292 N.Y.S.2d at 579–80.

The above provision is patterned after the Uniform Probate Code, section 2–508 (1969), which specifies that "property prevented from passing to a former spouse because of revocation by divorce or annulment passes as if the former spouse failed to survive the decedent . . . ."

The New York court recognized that if the legislature had wanted to treat a divorce as declaring the spouse civilly dead, it could have so provided such as in Missouri. Since the legislature did not so elect, the New York court refused to read that into the statute and concluded that "(t)he dispositive provisions of the will are limited by certain conditions which not having occurred, caused the results of intestacy. 57 Misc.2d at 334–35, 292 N.Y.S. at 581. The Iowa legislature has not amended section 633.271, which was adapted from section 53 of the Model Probate Code, nor adopted the Uniform Probate Code.

Another case on somewhat different facts but reaching the same result as the trial court here is *Davis v. Davis*, 24 Ohio Misc. 17, 258 N.E.2d 277 (Ct.C.P.1970).

I find the reasoning of the Washington and New York courts persuasive.

Also, the spirit of our laws of descent and distribution should not be disregarded. The Iowa bar committee comment to section 633.274 (which provides a devise to a spouse shall lapse unless intent to the contrary is clear and explicit in the will) states: "Testators ordinarily do not intend property to pass to heirs of predeceased spouses, unless such heirs are the same as those of the testators . . . ."

We have said, "[W]hen construction of [a] will is required, a construction is favored which most nearly brings the bequest in conformity with laws of descent and distribution." *Watson v. Manley*, 257 Iowa 92, 97, 130 N.W.2d 693, 696 (1964).

The majority interprets the condition precedent—that Sena predecease Corwin—to mean that Corwin intended his estate

should go to his former stepson, Wayne Nelson, if for *any reason* Sena could not take under the will. However, the will specifically states "predecease," not "any reason," as the condition. A gift by implication argument is then made bottomed on Corwin's intent to disinherit his children, which succeeds in ignoring or rewriting the clear language of the condition precedent Corwin had used. The result reached also effectively rewrites section 633.271 to read as if section 2–508, Uniform Probate Code, had been adopted. Amendment of the statute should be left to the legislature and not done by us. We are bound by what the legislature said in section 633.271, rather than what it should or might have said. Iowa R.App.P. 14(f)(13).

In sum we should take section 633.271 and Corwin's will as we find them. The condition precedent did not occur.

Therefore, I would vacate the court of appeals decision, and affirm the trial court ruling that the gift over to the former stepson, Wayne Nelson, failed and that the estate passed by intestacy to Corwin's children.

REYNOLDSON, C. J., and REES and HARRIS, JJ., join this dissent.