**Luella E. LARSON, Claude I. Jensen and Neal W. Jensen, Appellants,**

v.

**Ossie ANDERSON, Executor of the Last Will and Testament of Bessie Hesla, Carrie Enderson, et al., Appellees.**

**No. 53476.**

Supreme Court of Iowa.

May 6, 1969.

Whitney, Whitney & Stern, Storm Lake, for appellants.

J. A. Malone, Sioux Rapids, for Ossie Anderson, and Pendleton & Pendleton and James Schall, Storm Lake, for Carrie Enderson, and others, appellees.

SNELL, Justice.

█ This appeal follows district court proceedings for construction of the Last Will and Testament of Bessie Hesla. The petition for construction was filed by the executor. Pursuant to section 633.33, Code of Iowa, it was tried as a proceeding in equity. It is reviewable de novo.

The scrivener of the will was a member of the Minnesota Bar and the husband of one of decedent's sisters. There is no charge of any undue influence but as the trial court found it is "abundantly clear" that the scrivener was either unaware of the legal meaning of the conflicting language under the law of Iowa or employed the language in attempting to articulate a somewhat confused intention. In any event it is clear that the will contains repugnancies and ambiguities.

Bessie Hesla, a resident of Buena Vista County, Iowa, died testate. She was survived by neither spouse nor issue. She was survived by two elderly sisters, Carrie Enderson and Luella E. Larson. She was predeceased by her other brothers and sisters.

Paragraph numbered "First" of her will directed payment of debts and expenses.

Paragraph numbered "Second" provided for the payment of inheritance, succession and similar taxes.

Paragraph numbered "Third", in subparagraphs A and B, made gifts of money to a brother-in-law, Endrew Hesla and a niece Irene Enderson. It then provided:

If any one or either of the devisees or legatees mentioned in Subdivisions (A) and (B) of this paragraph, die prior to distribution to them of their respective gifts, such gifts, shall lapse and become a part of the residue of my estate."

Endrew Hesla predeceased testatrix. Irene Enderson survived.

Paragraph numbered "Fourth" gave personal effects, clothing, jewelry, etc. in her home to a brother, William C. Mangold, and three sisters, Emma Hegland, Mrs. Carrie Enderson and Luella E. Larson "to share and share alike, and for their sole use and benefit and with the right and power to mortgage, sell and dispose of same as absolute owners thereof; provided that they shall survive distribution thereof to them, but if they or either of them shall die prior thereto then such bequest, gift, share or interest therein shall lapse and become a part of the residue of my estate."

Of these, Carrie Enderson and Luella E. Larson alone survived.

Paragraph numbered "Fifth" gave to her brother William C. Mangold and her three sisters Emma Hegland, Mrs. Carrie Enderson and Luella E. Larson, all her real estate, including her specifically described home and her farm property containing 50.31 acres.

These words appear before the description "All to share and share alike", and following the description these words appear: "To have and hold during their natural life and with power to mortgage, sell and convey the same and use and dispose of the proceeds thereof to all intents and purposes as owners thereof in fee and
(sic)
as joint tennants and not tenants in common provided they or either of them survive distribution thereof, but in the event they or either of them should die prior thereto then such bequest, gift, share or interest therein shall lapse and become a part of the residue of my estate."

William C. Mangold and Emma Hegland predeceased, and Carrie Enderson and Luella E. Larson survived testatrix.

Paragraph numbered "Sixth" gave all the rest, residue and remainder of her property of every nature and kind to her

brother William C. Mangold and her three sisters Emma Hegland, Carrie Enderson and Luella E. Larson "to share and share alike and with the right and power to mortgage, sell and convey the same and use and dispose of the proceeds thereof to all intents and purposes thereof in fee and (sic) (sic) as joint tennants and not tennants in common."

As noted, supra, only Carrie Enderson and Luella E. Larson survived.

Paragraph numbered "Seventh" nominated an executor and authorized sale and administrative authority. It is not involved herein.

A Codicil to the will named 33 nieces and nephews as beneficiaries of certain shares of stock.

The matter was submitted to the trial court on the probate records and files and stipulated facts.

The appellants contended and the trial court held that the Codicil was of no force and effect. No appeal has been taken from this ruling and neither the meaning nor effect of the Codicil is involved in this appeal.

On the only issue involved in this appeal, the trial court construed the Will of Bessie Hesla as giving all of her property to her predeceased brother, her predeceased sister and her two surviving sisters as tenants in common and the share of the predeceased brother and predeceased sister passed on down to their heirs under the antilapse statute.

Luella E. Larson assigned all her interest in the estate to Claude I. Jensen and Neal W. Jensen.

Luella E. Larson and Claude I. Jensen and Neal W. Jensen appealed and are the only appellants.

I. The trial court cited and used statements from In Re Estate of Zang, 255 Iowa 736, 123 N.W.2d 883 from which we quote:

"Courts, of course, have no authority to make or remake the will of a testator. The function of the court is to determine whether there is any ambiguity in the provisions of the will, and then to admit extrinsic evidence to show the intent of the testator, and to aid in resolving any doubt arising from the language used in the will. * * *

"Certain accredited canons are generally applied in interpreting wills which do not themselves unmistakably reveal the maker's intention. They are sometimes stated as follows: (1) The law will impute to a testator's words such a meaning as, under all the circumstances, will conform to his probable intention and be most agreeable to reason and justice. [Citation] (2) In determining the testator's intention the court should place itself as nearly as possible in his position, and hence should take into consideration the situation of the testator and the facts and circumstances surrounding him at the time the will was executed, * * *." (loc. cit. 738 and 739, 123 N.W. 2d 884 and 885)

■ In interpreting an instrument of this kind the instrument must be taken by its four corners and each paragraph read in the light of the other provisions. In Re Estate of Ritter, 239 Iowa 788, 797, 32 N.W. 2d 666, 2 A.L.R.2d 1301.

As noted in the Zang case, supra, the facts and circumstances surrounding testatrix at the time the will was executed may be considered.

■ The will was not drafted by an Iowa lawyer, but it was drawn for an Iowa resident. The repugnancies between the words "joint tenants" and the other provisions in the will and sometimes in the same sentence as in paragraph numbered "Fifth" are apparent. Appearing as they do the technical words "joint tenants" are not entitled to the full weight that they might be entitled to if used by an experienced Iowa draftsman. The words are

foreign to the other express language of the will.

II. In paragraphs 3, 4 and 5 of the will the benefits are conditional on surviving "distribution" in the estate. The trial court held that the words "survive distribution" meant surviving the death of the testatrix and not actual distribution during the probate of the estate. There has been no appeal from this holding and discussion here is unnecessary.

III. Section 633.273, Code of Iowa, provides:

"Antilapse statute. If a devisee die before the testator, his heirs shall inherit the property devised to him, unless from the terms of the will, the intent is clear and explicit to the contrary."

An intent "clear and explicit to the contrary" appears in paragraphs 3, 4 and 5, but not in paragraph 6, quoted supra, and as noted infra.

■ IV. Paragraph numbered "Third" bequeathed $200 to. Endrew Hesla. He predeceased testatrix. The bequest lapsed and became a part of the residuary estate. One hundred dollars ($100) was bequeathed to Irene Enderson. She survived and is entitled to the bequest.

■ V. Paragraph numbered "Fourth" does not use the words "joint tenants." The bequest is of personal property to a brother and to three sisters share and share alike if they survive. It is provided that if they or either of them die prior to distribution such share shall lapse and become a part of the residuary estate.

The brother and one sister predeceased testatrix. Carrie Enderson and Luella E. Larson survived.

The trial court held that each survivor was entitled to one-fourth of the bequest and that the bequests of the one-half interest of the predeceased brother and sister lapsed and became a part of the residuary estate. We agree.

VI. Paragraph numbered "Fifth" as noted supra devised real estate to the same brother and sisters. In this paragraph the words "in fee and as joint tenants and not tenants in common" appear. These words are followed in the same sentence by words limiting their taking to surviving the testatrix, for lapse in the event of death before testatrix' death and devolution of the lapsed share to the residuary estate.

■ With the development of our law survivorship, that is the right of a surviving joint tenant to take the entire estate, has become the distinguishing characteristic of an estate in joint tenancy. In Re Estate of Louden, 249 Iowa 1393, 1399, 92 N.W.2d 409.

In 20 Am.Jur.2d, Cotenancy and Joint Ownership, § 12, page 106, this appears: "* * * the most important element of a joint tenancy * * * is the intent of the creators that the right of survivorship shall exist."

In the case before us the words of the creator (testatrix) in providing for lapse and devolution of the lapsed shares completely negate the idea of survivorship. The words "joint tenants and not as tenants in common" are repugnant to and irreconcilable with the other mandates of the testatrix and do not express her clear intent.

■ Undoubtedly joint tenancies have a place in our scheme of estates and serve a useful purpose relative to both real and personal property. However, because of the distortions and inequities that may arise from inadvised use of words indicative of joint tenancies the intent of the creator must be clear.

Section 557.15, Code of Iowa, provides:

"Tenancy in common. Conveyances to two or more in their own right create a tenancy in common, unless a contrary intent is expressed."

■ Our court as early as 1869 in Hoffman v. Stigers, 28 Iowa 302 said that

estates in joint tenancy are disfavored by our law. See also Albright v. Winey, 226 Iowa 222, 284 N.W. 86, and In Re Estate of Miller, 248 Iowa 19, 79 N.W.2d 315.

A devise using the words "share and share alike" creates a tenancy in common. Dethlefs v. Carrier, 245 Iowa 786, 64 N.W.2d 272.

The trial court concluded "that it was testatrix' intent to devise her real estate in four equal shares in fee to her brother and sisters as tenants in common contingent on the additional provision that should any devisee predecease her, that particular bequest or share should then pass to and become a part of the residue of her estate."

We agree.

VII. The effect of the words "to have and hold during their natural life" and with power to sell have not been discussed on appeal. Luella E. Larson has conveyed her interest in the estate. Carrie Enderson has not appealed. Neither have the residuary beneficiaries. The question, if any, inherent in the quoted words is not before us.

VIII. As noted, supra, paragraph numbered "Sixth" gave the residuary estate to testatrix' brother and three sisters. As we said in preceding divisions the words "joint tenants and not tenants in common" are not controlling. In this paragraph there is no provision for lapse. Our antilapse statute applies. Division III, supra.

The trial court found:

"The residue consists of any and all personal property not described in paragraph Fourth or in other provisions of the will, including one-half of the property described in Paragraph Fourth which is part of the residue by reason of the prior deaths of William C. Mangold and Emma Hegland. It also includes one-half interest in the real estate, being the two one-fourth shares of the predeceased brother and sister."

The Court then ordered:

"The residue shall be divided into four equal shares, with one-fourth share each to the two surviving sisters and the remaining one-half being distributed to the heirs-at-law of William C. Mangold and Emma Hegland."

This distribution, of course, should be per stirpes and not per capita.

The trial court was right.

The case is

Affirmed.

All Justices concur.