In the matter of the Estate of Christ. F. Ihmes, deceased, W. M. Murphy, executor, Appellee; St. Paul Evangelical Lutheran Church of Sioux City, Iowa, Appellee; Convent of Good Shepherd of Sioux City, Iowa, Appellee; Sisters of St. Benedict of Sioux City, Iowa, Appellee, v. T. M. Zink and J. M. Wormley, as guardians of Anna Maria Katherina Ihmes and Frederick William Ihmes, minors, and said minors by their guardian, Appellants.

**Estates of decedents:** CHARITABLE BEQUESTS : STATUTORY LIMITATIONS.
1 Bequests to specified charitable enterprises conducted by a corporation organized not for pecuniary profit are in effect bequests to the corporation, and are subject to the statute providing that bequests to such corporations in excess of one-fourth of the testator's estate shall be invalid.

**Same:** OBJECT OF STATUTE. The purpose of the statute limiting bequests to corporations for charitable and religious purposes is to protect the natural objects of the testator's bounty against imprudent, pious or philanthropic motives; and to carry out the purpose of the statute no more can be given to two or more such corporations than might have been bequeathed to one.

*Appeal from Woodbury District Court.*—Hon. John F. Oliver, Judge.

Wednesday, February 7, 1912.

Christ. Ihmes died January 6, 1910, and upon the admission of his will to probate, W. M. Murphy was appointed executor thereof. The petition of the latter dis-

closed that decedent left no real estate, and that, after the
payment of debts and costs of administration, there will
be left for distribution about $8,240, and he prayed for
construction of the decedent's will and direction as to the
distribution of the estate.   The will, in so far as material,
is in words following:

Second.   Subject to the foregoing, I give to my two
children, Anna Maria Katherena Ihmes and Frederick Wil-
liam Ihmes, the sum of one thousand ($1,000) dollars each,
the same to be paid to them upon their becoming of legal
age respectively.

Third.   I give to Mrs. Katherena Mahnke, one thou-
sand dollars ($1,000); to Fred Uda, one thousand dollars
($1,000); to the German Lutheran Church of Sioux City,
Iowa, two thousand dollars ($2,000); to the St. Vincent's
Hospital of Sioux City, Iowa, one thousand dollars
($1,000); and to the Old Men's Home of Sioux City,
Iowa, one thousand dollars ($1,000).

Fourth.   All the remainder and residue of my estate
after the payment of the above bequests and expenses of ad-
ministration, I give to the Good Shepherd's Home, of Sioux
City, Iowa, whatever the same be and wherever situated.

Due notice was given, and St. Paul's German Evan-
gelical Lutheran Church answered claiming to be the bene-
ficiary intended in the bequest to "the German Lutheran
Church," and also alleged that the other beneficiaries last
mentioned in the will were entitled to take.   The Sisters
of St. Benedict of Sioux City, Iowa, interposed a petition,
alleging that it was incorporated to conduct a hospital and
old people's home, and as such, did conduct the St. Vincent
Hospital at Sioux City, and also the Home of Old People,
wherein it cared for old men and women who might enter
under certain restrictions, and the petitioner alleged that
St. Vincent Hospital was intended by the decedent; that
no such place as Old Men's Home was known; and that
testator intended the Home of Old People operated by
petitioner.   J. M. Wormley was appointed guardian ad

litem of Frederick William and Anna Maria Katherena Ihmes, and in answer for them alleged that the bequests to the German Lutheran Church, St. Vincent's Hospital, the Old Men's Home, and the Good Shepherd Home were to corporations, and, as the law prohibited more than one-fourth of the estate to be willed to corporations, prayed that the same be enforced. On hearing, decree was entered declaring none of the three bequests last mentioned was to a corporation and ordering distribution as prayed by St. Paul's German Evangelical Lutheran Church and the Sisters of St. Benedict. The guardian ad litem appeals.— *Reversed* and *remanded.*

*J. M. Wormley* and *T. M. Zink,* for appellant.

*J. S. Lothrop,* for appellee executor.

*Carter & Carter,* for appellee St. Paul's Evangelical Lutheran Church of Sioux City, Iowa.

*F. E. Gill,* for appellee Convent of the Good Shepherd of Sioux City, Iowa.

*Jepson & Jepson,* for appellee Sisters of St. Benedict of Sioux City, Iowa.

LADD, J.—The testator, after directing the payment of his debts and funeral expenses, the payment of $1,000 each to his son and daughter, and also $1,000 each to Mrs. Mahnke and Fred Uda, bequeathed to the "German Lutheran Church of Sioux City, Iowa, $2,000; to the St. Vincent's Hospital of Sioux City, Iowa, $1,000; and to the Old Men's Home of Sioux City, Iowa, $1,000." The residue of his estate was left "to the Good Shepherd's Home of Sioux City, Iowa."

The petition of the executor disclosed that the entire estate for distribution would not exceed $8,500, and the court found that the testator intended the St. Paul's Ger-

man Evangelical Lutheran Church, a corporation organized not for pecuniary profit, in naming the "German Lutheran Church." The court also found that by "Old Men's Home" decedent meant St. Benedict's Home for the Aged, and held that neither the bequest to it nor to St. Vincent's Hospital, nor to the Good Shepherd's Home was within the prohibition of section 3270 of the Code. That the intention of the testator was as determined is not questioned. The contention is that the bequests were to corporations, and that, as the aggregate of these exceeded one-fourth of the estate, the excess should be distributed to the heirs of the decedent, rather than to the legatees named.

The statute declares that: "No devise or bequest, however, to a corporation organized under the chapter relating to corporations not for pecuniary profit, or to a foreign corporation of a similar character, shall be valid in excess of one-fourth of the testator's estate after payment of debts, if a spouse, child or parent survive the testator." Section 3270, Code.

The parties agreed that the Sisters of St. Benedict of Sioux City, Iowa, was a corporation not for pecuniary profit, that it conducted a hospital commonly known as St. Vincent's Hospital in Sioux City, and also a home for old people, commonly known as St. Benedict's Home for the Aged; also, that the Convent of the Good Shepherd was a corporation organized not for pecuniary profit, and that the gift of the residue was intended for it.

As the bequest of the residue was intended for the Convent of the Good Shepherd, and it was a corporation, no argument is essential to indicate the error of the court in holding this bequest not within the provisions of the statute quoted.

Nor do we entertain any doubt as to the error in declaring the bequests to St. Vincent's Hospital and St. Benedict's Home for the Aged not within the statute. These names were merely designations of the charitable enter-

prises in which the corporation known as the Sisters of St.

1. ESTATES OF DECEDENTS: charitable bequests: statutory limitations.

Benedict was engaged, not of unincorporated associations, as seems to have been assumed. The corporation conducted them, and nothing in the record indicates that any person or body, corporate or otherwise, save the inmates being cared for, was concerned therein. The names indicated different departments of work in which the benevolences of the corporation were bestowed, and the bequests may be construed as in aid of the corporation for the use of the particular charity specified. *Matter of Hallgarten*, 2 N. Y. St. Rep. 82; *Appeal of Evangelical Ass'n*, 35 Pa. 316; *Yard's Appeal*, 64 Pa. 95; *Lennig's Appeal*, 154 Pa. 209, (25 Atl. 1049); 6 Cyc. 936 et seq. Otherwise, the bequest necessarily must fail for want of a beneficiary. In other words, the gifts must be construed as made to a corporation or fail. This is indicated by the circumstance that the corporation only is claiming them.

The design of the statute quoted is to restrain the power of the testator in giving, thereby preventing him from disregarding the just claims of those with natural

2. SAME: object of statute.

expectations on his bounty, through pious or philanthropic motives. Its purpose is to protect the natural objects of his bounty from imprudent gifts to their neglect. Its aim is to prevent the giving of an undue proportion to charity by will when relatives have, in the opinion of the Legislature, a better claim. But it does not compel the testator to give his property to his relatives, nor deprive him of the right to give it all to charity during life. *Amherst College v. Ritch*, 151 N. Y. 282, (45 N. E. 876, 37 L. R. A. 305); *Jones v. Habersham*, 107 U. S. 174, (2 Sup. Ct. 336, 27 L. Ed. 401); *Allen v. Stevens*, 161 N. Y. 122, (55 N. E. 568, 575). It may have been recognized by the Legislature that men when approaching death are often beset with difficulties not conducive to the calm balancing of the claims of charity and

of near relatives. The language of Parker, C. J., in *Allen v. Stevens,* 161 N. Y. 122, (55 N. E. 568, 575); is pertinent:

It was recognized, perhaps, that in the fear of death, men who have never exhibited a charitable impulse, suddenly awaken to the fact that behind them are lost opportunities for usefulness that in some way ought to be made good; and in order to balance the account, they look about for an opportunity to do good with their money, and find at once a man interested in promoting the fortunes of some religious or charitable institution, who, without hesitation, begins to play, and with a skill acquired by long experience, upon their fears and hopes. Given such a man and such a situation, it was readily conceived that, in his thought of self, the just demands of wife or child or parent might be temporarily lost sight of, and his all devoted to religious or charitable purposes through some of the many societies, associations, and corporations which are to be found on every hand. Hence the design of the framers of the statute was to place a limitation upon the power of a person, thus moved, to dispose of more than one-half of his property by will to such organization, to the end that he should have an opportunity to measure the claims of his kindred upon him as to the remaining half, unembarrassed by the importunities of those whose business it is to get money for the societies, associations, or corporations they represent; and this it was thought would be substantially accomplished by an act prohibiting him from giving more than one-half of his property to the societies, associations, and corporations most likely to be considered.

Regardless of the theory of its enactment, the statute must be given effect. No more could be given to two or more corporations than might have been bequeathed to one. *Chamberlain v. Chamberlain,* 43 N. Y. 424, 440.

We are of opinion that, in adjudging that the last three bequests in the will were not to corporations organized not for pecuniary profit, the court erred.

The cause is remanded for such orders as may be essential to close the estate.—*Reversed.*