J. O. WATSON, JR., executor of last will and testament of Rufus
B. Manley, deceased, plaintiff-appellee, v. THORA MAN-
LEY (not a party); FLOYD MANLEY, JANICE
WESTERLY and CAROLYN HUNERDOSSE,
appellants, et al., defend-
ants-appellees.

No. 51425.

(Reported in 130 N.W.2d 693)

OCTOBER 20, 1964.

REHEARING DENIED DECEMBER 15, 1964.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, and Hall & Ewalt, of Indianola, for defendants-appellants Floyd Manley, Janice Westerly and Carolyn Hunerdosse.

Watson, Elgin & Hoyman, of Indianola, for plaintiff-appellee.

Maynard Hayden, of Indianola, for First Methodist Church of Indianola, Iowa, First Methodist Church of Milo, Iowa, and Garold McCauley, Howard Baughman, Roy Davey, Lewis Mead, Franklin Knouse, Eldon Nutting, Kenneth King, Dean Young and Earnest Biddle, the Board of Trustees of said First Methodist Church of Milo, defendants-appellees.

LARSON, J.—The principal issue raised in this declaratory-judgment action instituted by the executor of the Last Will and Testament of Rufus B. Manley, deceased, was whether the bequest to the First Methodist Church of Indianola, Iowa, and the First Methodist Church of Milo, Iowa, was limited to 25 percent of decedent's estate after payment of debts, either by the will

itself or by the provisions of section 633.3, Code, 1962, which purports to limit charitable devises. The trial court held it was not so limited, and testator's son and two granddaughters appeal.

There are no material facts in dispute. Testator, 86 years of age, died December 20, 1962, leaving surviving him a widow, Thora Manley, not a party to this appeal, one son, Floyd Manley, and two granddaughters, Janice Westerly and Carolyn Hunerdosse, appellants herein.

Omitting the preliminary paragraph, the material parts of the will and codicils to be considered are as follows:

Item I provides "that my just debts and expenses of administration be paid."

Item II provided a bequest to his wife of $8000 and testator's residence in Indianola, his household goods, and "other funds, securities and personal property." However, this item was changed by Item II in testator's second codicil to provide that she should have an amount equal to $8000 minus any amount in joint tenancy accounts at the time of testator's death. She did not assert any claim except those in the will, due to an antenuptial agreement, and did not participate in this trial or the appeal.

Item III of the will was also changed by Item I of the second codicil executed December 5, 1962. It contains the language giving rise to this controversy between the churches on one hand and testator's son and granddaughters on the other. It provides:

"I change Item Three (3) of my original Will as modified by the Codicil as follows: I delete the following words from said Item Three: 'The balance of the proceeds from the real estate after payment of expenses of administration, shall be payable to the First Methodist Church of Indianola, Iowa.' I insert in lieu thereof the following: 'The *balance of the proceeds from the real estate*, after payment of expenses of administration, I give one-half to the First Methodist Church of Indianola, and one-half to the First Methodist Church of Milo, Iowa. In the event my bequest to said churches *should exceed* the share of my estate which can be given to *a corporation* organized *under the chapter relating to corporation not for profit, I decrease* said gift to said churches so that the *total going to said churches equals twenty-*

*five per* cent (25%) of my estate after payment of debts and *I give the amount* by which said bequest is decreased one-half to my granddaughter, Janice Westerly, and one-half to my grand-daughter Carolyn Hunnerdoss.' " (Emphasis supplied.)

Item III of the original will also provided that from the proceeds of the sale of the farm his son Floyd should receive $4000 and his granddaughters Janice and Carolyn should each receive $4000 and his great-granddaughter $1000. Item I of the first codicil provided a bequest to his great-grandson, Jory Wayne Hunerdosse, of $1000.

The learned trial court, in considering both the original will and the codicils, found it was testator's express intent to give the entire balance of said proceeds, after payment of special bequests and administration expenses, to the churches *if permitted by law,* and that it was so permitted because the son Floyd, not being directly benefited by the reduction of the charitable bequest, could not object even though he was a person designated in section 633.3 of the Code who could object to a bequest of over 25 percent of his father's estate, and that, although the grand-daughters were the real parties in interest, they could not object since they were not persons designated in section 633.3 of the Code. We cannot agree with this finding.

I. The intent of the testator is to be ascertained from the terms of the will in connection with other legitimate sources of information. The law favors a construction which will give some effect to every provision contained therein, and here testator's selection of granddaughters as devisees of the remainder, should the balance of the farm sale exceed 25 percent of his estate, is in accord with the thought that testator recognized the just claims of those with natural expectations on his bounty and the legislative requirement aimed to prevent the giving of an undue proportion of one's estate to charity by will when near relatives in the opinion of the lawmakers have a better claim. Of course, this requirement does not deprive a testator of the right to give all his property to charity during his life, or to give his property by will to any person he pleases (section 633.1, Code, 1962), but its purpose was to restrain him from disregard-ing the just claims of those with natural expectations on his

bounty and, as death approached, to give away his property through pious or philanthropic motives. In re Estate of Ihmes, 154 Iowa 20, 24, 134 N.W. 429, 430, and citations.

Section 633.3, Code, 1962, provides: "No devise or bequest to a corporation organized under the chapter relating to corporations not for profit or * * *, shall be valid in excess of one-fourth of the testator's estate after the payment of debts, if a spouse, child, child of deceased child, or parent survive the testator."

■ While it may be true that a devise in violation of this statute is merely voidable, and the legislature and the court can determine which individuals may challenge such a voidable bequest, courts when in doubt as to the intent generally will not deny protection to certain close relatives of a testator, especially when the charitable bequest is made in the face of death itself. 50 Columbia Law Review 94; Zollmann on Charities, sections 504, 513, 576. Since the purpose of these statutes is to protect the natural recipients of the testator's bounty, we are not to extend its application to make it an instrument to avoid that protection, especially where no such testator's intention is clearly expressed. Even though charitable trusts are favorites of the law, courts should be slow to permit one to defeat such a public purpose as that expressed in section 633.3.

■ Appellants urge the better view under the circumstances here would be that testator referred to this statute, recognized its purpose, and in so doing intentionally restricted his bequest to the churches to 25 percent of his estate; that he expressly gave the excess, if any, to natural objects of his affection, his granddaughters. They say it is unthinkable that he intended the apparent bequest to them as a method of circumventing or preventing objections to the unlimited gift to the churches. We are inclined to agree.

■ ■ II. No canon of testamentary construction has any application with respect to the decedent's last will and codicil except the cardinal and primary rule that the intention of the testator as it appears from the whole instrument must govern. The intention of the testator must be ascertained from the will itself and from nothing else, if its language is plain and unambiguous, and when so determined it must be given effect if it is

a lawful one and not against public policy. In re Estate of McCulloch, 243 Iowa 449, 461, 52 N.W.2d 67; In re Estate of Artz, 254 Iowa 1064, 1070, 120 N.W.2d 418; Palmer v. Evans, 255 Iowa 1176, 1183, 124 N.W.2d 856, 859, 860. The intention must be that which is manifest from the express language of the will as modified by the codicil, or by necessary implication. In re Estate of Syverson, 239 Iowa 800, 804, 805, 32 N.W.2d 799, 801, and citations. Of course it is axiomatic that a will and its codicil or codicils are to be read and construed together as one instrument executed on the date of the last codicil, unless there is a manifest intention to the contrary. In re Estate of Artz and In re Estate of McCulloch, both supra; 57 Am. Jur., Wills, section 608; 95 C. J. S., Wills, section 625. As in most such cases before us, these rules are conceded by all parties. It is the application of those rules that cause trouble.

Did the intention clearly expressed by the words used in this will disclose a desire to give the churches a maximum of 25 percent of his estate, and to give the residue, if any, to his granddaughters Janice and Carolyn, or did it clearly express a desire to give all the balance of the receipts from the sale of real estate to the churches?

█ III. As previously stated, when construction of the will is required, a construction is favored which most nearly brings the bequest in conformity with laws of descent and distribution. So here, even if these provisions were subject to construction, nothing appears to indicate a testator's desire to cut his granddaughters out of the remainder. Obviously he loved his granddaughters, gave each a substantial specific bequest, and clearly expressed the desire that they receive any balance after the charitable bequest of 25 percent. The only other possible explanation of the language, i.e., that this specific provision was only to prevent his son from objecting, thus avoiding the statute's designation of a party entitled to object, requires a strained interpretation of the language in the will and codicils. It would clearly be against the public policy announced by this legislation. Thus we cannot find in the testator's words such an intent and purpose. As bearing on the question, see In re Estate of Coleman, 242 Iowa 1096, 1099, 49 N.W.2d 517, 519; In re Will

of Richter, 212 Iowa 38, 234 N.W. 285; In re Will of Grilk, 210 Iowa 587, 231 N.W. 327; In re Estate of Ihmes, supra, 154 Iowa 20, 134 N.W. 429. In Ellsworth College v. Carleton, 178 Iowa 845, 854, 160 N.W. 222, this court announced the prevailing rule in such matters, that the interpretation is preferred which approximates closest to the statutory order of distribution. Thus, if the reading of the will of testator Manley leaves any doubt that he intended to decrease the gift to the churches to 25 percent of his estate, that doubt must be resolved so as to bring it in conformity with the rules of descent and distribution. Appellants' contention, that the remainder was given to natural objects of his bounty and that this bequest cannot be ignored, is sound, and we are satisfied it was not intended as a gift over or a gift conditioned upon a successful invoking of the statute by his son or others.

In the second codicil the testator recognized the statutory limitation on amounts one may bequeath to nonprofit corporations under section 633.3 of the Code and altered his will accordingly. In his original will there was no reference to that limitation, although we may presume he knew that under it his son could exercise his right to object and take the residue himself. It must be concluded, therefore, that by the change made by the codicil he clarified his intention to establish the amount that was to go to the churches, and to specifically provide where the balance, if any, should go. It is sometimes permissible to transpose, or even alter, the language used in a will, in order to arrive at testator's meaning. Layton v. Tucker, 237 Iowa 623, 626, 23 N.W.2d 297, 298; In re Estate of Ditz, 254 Iowa 444, 449, 117 N.W.2d 825, 827. Thus we think the testator here said that if the balance of the proceeds from the sale of his real estate exceeded the share which is referred to in the statute relating to nonprofit corporations, then in that event the gift to the churches was to be 25 percent of his entire estate after payment of debts. The bequest to the churches was limited by saying that if this sum amounted to more than the percentage permissible to nonprofit corporations in the statute, then "I decrease said gift to said churches so that the total going to said churches equals twenty-five per cent (25%) of my estate * * *." He might have

said 10 or 15 percent, but he definitely fixed it at 25 percent. If, then, the *balance of the proceeds* from the sale of his real, estate, after payment of expenses of administration, *exceeded 25 percent of the estate*, testator in unmistakable language gave one half of that excess to each of his granddaughters.

We are not persuaded that the words used by testator are to the effect that he desired all the balance of his estate to go to the churches *unless prohibited by the law or by the court*, and that only in such an event should any excess go to the granddaughters. He did not say that the gift to the churches was to be decreased to 25 percent, *only* if the statute was applicable and was successfully invoked by a designated member of the family. If that unusual disposition was to be made, a much clearer expression of testator's intent would be necessary. The limiting statute here, we think, was referred to only to fix the maximum amount intended for the churches, and the language fixing it as 25 percent in case the amount left in the balance exceeded that amount is absolute. Since there was no language conditioning the decrease upon the invocation of the statute, we conclude testator did not intend to condition his bequest to the granddaughters on the filing of proper objection under the statute.

As pointed out in the recent case of In re Will of Knouse, 254 Iowa 1339, 1340, 121 N.W.2d 151, 152, the law is often accused of relying too much upon technicalities and of forsaking the demands of common sense and justice in so doing. We are afraid appellees' counsel, in his zeal, persuaded the trial court to follow supertechnical paths in arriving at a conclusion which we feel was unjustified if not improper, and which we cannot believe was in the testator's mind when he executed the second codicil. Of course, we are not critical of appellees' efforts to prevail, for counsel was duty bound to do his best for his clients. He did well, but we cannot agree that testator's language disclosed a clear intent to give all the balance of receipts from the real-estate sale to the churches and to thwart the rights of his heirs and the public purpose back of the statute.

IV. Having so decided, we find it unnecessary to determine the question of whether the son, as a designated person under the statute, could here object to the bequest of more than 25 percent

of testator's estate, in view of the fact that he would not directly benefit thereby. While this issue seems not to have been raised in the case of In re Estate of Davis, 253 Iowa 973, 114 N.W.2d 314, a brother of testator was permitted to take the balance of the estate bequeathed to charity in excess of 25 percent upon the objection of testator's spouse who could not benefit herself. Furthermore, due to the recent adoption of the Iowa Probate Code, chapter 326, Acts of the Sixtieth General Assembly, section 266, replacing section 633.3, it would be of no value to the bar to pass upon this question.

V. Being satisfied the gift to the First Methodist Church of Indianola and the First Methodist Church of Milo, Iowa, was specifically fixed at 25 percent of decedent's estate after payment of administrative costs, we hold the balance of the proceeds from the real estate remaining should go to the granddaughters, Janice Westerly and Carolyn Hunerdosse, in equal shares. Other questions as to rents and profits being ordinary probate matters, their disposition must await the filing of reports therein.

This matter is therefore reversed and remanded with directions to render and enter a decree in conformity with this opinion.—Reversed and remanded with directions.

All JUSTICES concur except HAYS, J., not sitting.