ELKADER PRODUCTION CREDIT
ASSOCIATION, Appellee,

v.

Ray F. EULBERG et al., Defendants,

Theodore Berns et al., Appellants.

No. 2–58005.

Supreme Court of Iowa.

March 16, 1977.

Thomas J. Miller, McGregor, for appellants.

Ehrhardt & Gnagy, of Elkader, for appellee.

Heard by MOORE, C. J., and MASON, RAWLINGS, LeGRAND and UHLENHOPP, JJ.

RAWLINGS, Justice.

Declaratory judgment proceeding by mortgagee for interpretation of a will and codicil thereto. Trial court held that by the terms thereof fee title in a designated farm vested in decedent's widow to the exclusion of all children. A loan security mortgage given by the widow and her present spouse was attendantly upheld. Some defendant children appeal. We affirm.

January 14, 1955, Cyril C. Berns executed a will.

March 7, 1958, he effectuated a codicil to said will.

Defendant Christopher Berns was thereafter born.

June 28, 1964, Cyril C. Berns died, survived by his wife (Mary) and children.

Mary was appointed executrix of decedent's estate. She later married defendant Ray F. Eulberg.

August 13, 1965, said executrix, via attorney C. F. Neylan, filed a Final Report and Petition for Discharge. Embodied therein is this statement:

"That under the terms of the Last Will and Testament of Cyril Berns it was provided that in the event that his wife Mary Berns should re-marry that she shall then receive ⅓ of the estate and the children ⅔ at that time; Mary Berns has since remarried and therefore under the terms of said will she shall be decreed the owner of ⅓ of the property in the estate and the children above named ⅔."

August 25, 1965, a related court order was entered. It states, in part:

"WHEREFORE, it is hereby Ordered that the executrix be discharged *upon* the filing of receipt showing that there is no income tax due and owing (release from State of Iowa), together with receipt showing payment of the costs of administration, including fees of the executrix and her Attorney." (emphasis supplied).

No receipts showing payment of fees to executrix and her attorney were ever filed.

November 23, and again December 27, 1965, executrix sought and was granted authority to mortgage the involved farm in order to renegotiate an existing like encumbrance; pay estate expenses; and settle an unpaid claim.

April 25, 1972, Mary and her husband (Eulbergs) secured a loan from plaintiff Elkader Production Credit Association (PCA) and as security gave, individually, a mortgage on the aforesaid farm property.

A question later arose as to authority of the Eulbergs to so execute the mortgage given by them to PCA, and effectiveness thereof.

April 23, 1974, the present declaratory judgment proceeding was initiated by PCA.

December 24, trial court held:

"[T]he real estate referred to in the mortgage attached to plaintiff's petition and executed April 25, 1972, by the defend-

ants Roy F. Eulberg and Mary Jane Eulberg, is owned in fee simple by Mary Jane Eulberg, and the real estate mortgage given to the plaintiff by said parties April 25, 1972, is a valid real estate mortgage on the entire parcel referred to therein."

As stated by the appealing defendants these are the issues here raised:

(1) The intent of the testator was that, in event the testator's surviving spouse should remarry, the testator's real property should pass one-third to his surviving spouse and two-thirds to his children.

(2) Two-thirds of the real property in question has been decreed to the children through the process of probating the estate of the deceased, and their interest in said real property is not subject to a mortgage executed by their mother, the wife of the deceased, in her individual capacity.

These contentions will be considered in reverse order.

■ I. Contrary to the provisions of Iowa R.Civ.P. 70, plaintiff's petition failed to state whether its declaratory judgment proceeding stands in equity or law. We are satisfied, however, the action was properly presented and submitted as an equitable proceeding. Our review is therefore de novo. See *Estate of Randall v. McKibben,* 191 N.W.2d 693, 698 (Iowa 1971); Iowa R.Civ.P. 334, 344(f)(7).

II. First entertained is defendants' claim to the effect a two-thirds interest in the subject farm vested in the Berns children by virtue of the probate process in connection with decedent's estate.

In essence, these appealing defendants *now* maintain plaintiff's declaratory judgment action is barred by Section 633.487, The Code 1973. Significantly, however, the defense so interposed is here invoked for the first time. It was never raised below, by pleading or otherwise. Rather, counsel for defendants in trial court, not now representing them, relied on Code § 633.309 and the trial judge, in entering the adjudication from which this appeal is taken, focused entirely on the last cited enactment.

■ Despite defendants' argument to the contrary we are satisfied they (1) elected to assert a legal defense in trial court predicated on § 633.309 and (2) here, for the first time, impermissibly attempt to inject a new and different issue of law by invocation of § 633.487, which is not properly before us for consideration or review. See Petition of City of Des Moines, 245 N.W.2d 533, 539 (Iowa 1976); *England v. England*, 138 Conn. 410, 85 A.2d 483, 486 (1951); *Carroway v. Carolina Power & Light Company*, 226 S.C. 237, 84 S.E.2d 728, 734 (1954); 4 C.J.S. Appeal & Error § 228.

■ Furthermore, § 633.309 merely places a limitation on the time within which an action may be brought to contest or set aside the probate of a will, and neither such proceeding is here involved.

Consequently, trial court correctly held § 633.309 did not bar plaintiff's declaratory judgment action. See Iowa R.Civ.P. 264. Further discussion will serve no useful purpose.

The second issue asserted by appealing defendants affords no basis for a reversal.

III. Our review now fastens upon decedent's last will and codicil.

Article III of said will provides, in relevant part:

"I hereby devise all the real estate of which I may die seized to my beloved wife, Mary Berns, if she survives me, for the duration of her lifetime and so long as she shall remain my widow, but if she remarries then said life estate shall terminate forthwith and in lieu thereof she shall take her statutory interest in said property which shall immediately vest in her upon her election to receive the same, * * * and the remaining two-thirds of said real estate shall pass to and vest absolutely in my children then surviving, per stirpes; * * *."

Article V states:

"All the rest, residue and remainder of my property, including livestock, and machinery used in the operation of said real estate mentioned in Paragraph III, I give and bequeath to my said wife, Mary Berns, absolutely, if she survives me; if she does not survive me said property to go to my children who survive me, per stirpes, in equal shares."

And Article VI says:

"I hereby nominate and appoint my said wife, Mary Berns, as Executrix of this my Last Will and direct that no bond be required of her."

Finally, testator declared, by his March 7, 1958, codicil:

"I, Cyril C. Berns, being of sound and disposing mind and memory do hereby make, publish and declare this to be a Codicil to my Last Will and Testament heretofore executed by me bearing date of January 14, 1955, and do change my said Last Will and Testament as follows:

"ARTICLE 1

"I have five children, namely, my sons Theodore Berns, Michael Berns, and Richard Berns, and my daughters Ann Berns and Jane Berns, and having them in mind, I make no provision for them or for any child or children of mine who may hereafter be born or whom I may hereafter adopt.

"In all other respects and except as hereinabove set forth, I hereby republish, ratify and confirm my said Last Will and Testament dated January 14, 1955."

■ It is well settled, in cases such as this, (1) testator's intent is the polestar and if expressed shall control; (2) it must be gleaned from a consideration of all language contained in the will, the scheme of distribution, and facts and circumstances surrounding the making of the will; and (3) technical rules of construction should be resorted to only if the will is clearly ambiguous, conflicting, or testator's intent is for any reason uncertain. See e. g., *In re Estate of Spencer*, 232 N.W.2d 491, 495 (Iowa 1975).

■ This court has also held a testator's intent is not to be ascertained from a single part or paragraph or his or her will. That means the instrument must be read and considered as a whole, each part in connection with every other part and with the

entire will, with each part given meaning and effect if possible. See *In re Estate of Roberts,* 171 N.W.2d 269, 271–272 (Iowa 1969).

■■ Next, the purpose of a codicil is ordinarily to effect some change in the will as drawn. When lawfully executed it becomes a part of the original will, and the two instruments stand as one testamentary disposition. See *Estate of Randall v. McKibben,* 191 N.W.2d at 698. Unless there is an irreconcilable conflict or inconsistency between them, the codicil is no more the last expression of testator's intent than if it had been written as part of the will. If, however, there is such conflict or inconsistency, the codicil will govern. See *In re Estate of McCulloch,* 243 Iowa 449, 458–459, 52 N.W.2d 67 (1952); 95 C.J.S. Wills § 275(d).

■ In the same vein, a codicil supersedes a will only to the extent of incompatibility, one with the other, and the latter is to be disturbed no more than necessary in order to effectuate the former. See *In re Estate of Stonebrook,* 258 Iowa 1062, 1069–1070, 141 N.W.2d 531 (1966).

■ Also, as articulated in *Watson v. Manley,* 257 Iowa 92, 97, 130 N.W.2d 693, 696 (1964): "The (testator's) intention must be that which is manifest from the express language of the will as modified by the codicil, or by necessary implication." See also 79 Am.Jur.2d, Wills, § 532.

■ Furthermore, testator's intention must be leaned, not from what he meant to say, but rather what is meant by what he did say. See *In re Estate of Lemke,* 216 N.W.2d 186, 191 (Iowa 1974).

IV. Article III of the will, quoted above, after granting the spouse a conditional life estate in the farm, otherwise her dower interest, devises to testator's surviving children (not named) "the remaining two-thirds of said real estate". Opposing this is the codicil which unequivocally says testator, having his children (individually named) in mind, makes no provision for either them or any child later born or adopted. In all

other respects the January 14, 1955, will is ratified and confirmed.

■ Unquestionably the codicil is in conflict with and repugnant to the involved will because the codicil, by necessary implication if not expressly, repudiates, rescinds, and excises the Article III bequest to testator's children. More specifically, the children are unmistakably disinherited by the codicil. See 27 C.J.S. "Disinheritance" at p. 314. Absent any provision in the will or extrinsic evidence to the contrary, we are persuaded this was testator's manifest intent and purpose. In brief, the will and codicil, construed as one instrument, are not so lacking in clarity regarding testator's disinheritance intention as to invite or permit judicial intrusion.

V. But defendants argue the foregoing violates the established presumption against disinheritance. See *Anderson v. Wilson,* 155 Iowa 415, 429, 136 N.W. 134 (1912); cf. *In re Estate of Spencer,* 232 N.W.2d at 498. In the first place, such an abstract approach ignores this statement in *Blackford v. Anderson,* 226 Iowa 1138, 1172–1173, 286 N.W. 735, 754 (1939):

" 'It is the settled rule of this state that intestacy will be avoided, if avoidance is in reason possible, and the intention of the testator, if it can be ascertained, will be carried out.' (Citations). We have also said that courts do not look favorably upon a construction tending to disinherit those who would take without a will. (Citations). These rules might be said to neutralize each other. (Citation). But it must be remembered that they are merely rules of construction, and not rules of law. As such they are subservient, and but assistant, to that cardinal rule of testamentary construction, whose time-honored application has been so universal that it has become axiomatic: that the intention of the testator must be ascertained and made effective, if lawful and possible. The fact that [testator] did not leave it to presumption, but clearly said that he did not desire the appellants to have his property, definitely determines his intention."

Our holding does not, however, rest upon the above pronouncement alone.

■ In this jurisdiction no question attends the right of a competent person, absent a binding contract to the contrary, undue influence, fraud or coercion, to disinherit his children. See *Lepper v. Knox*, 179 Iowa 419, 421, 161 N.W. 454 (1917); Atkinson, Law of Wills, § 36, at 138–140 (2d ed. 1953); 79 Am.Jur.2d Wills, § 67, at 325; Code §§ 633.264–633.284; cf. *In re Estate of Miguet*, 185 N.W.2d 508, 516 (Iowa 1971), citing *In re Estate of Dobals*, 176 Iowa 479, 487–488, 157 N.W. 169 (1916).

■ Nevertheless, if a person provides by will or codicil thereto for the exclusion or disinheritance of his heirs at law or next of kin, such is inoperative unless a valid disposition is otherwise made of testator's property. See *Fletcher v. Fletcher*, 200 Iowa 135, 138, 204 N.W. 410 (1925); 23 Am.Jur.2d, Descent and Distribution, § 26; 79 Am.Jur.2d, Wills, § 67; 96 C.J.S. Wills § 718.

■ Also, as stated in the case of *In re Estate of Hoagland*, 203 N.W.2d 577, 581 (Iowa 1973):

> "[A] residuary devise is 'the disposition of that which is left after satisfaction of the debts, expenses of administration, and the specific and general bequests, or as sometimes said, that not otherwise disposed of.' *In re Estate of Hartman*, 233 Iowa 405, 410, 9 N.W.2d 359, 363. And the court stated in *Nichols v. Swickard*, 211 Iowa 957, 959–960, 234 N.W. 846, 847, 'The general, ordinary, and usual signification of the term "residuary estate" is what remains after the debts, expenses of administration, legacies, and satisfaction of devises have been made. The purpose of such clause is to make a complete testamentary disposition of the testator's estate, so that no part of it may be left to pass as intestate property.' See also 57 Am.Jur. Wills § 1415 at 946–947; 96 C.J.S. Wills § 796 at 215."

■ Mindful of the foregoing, we look again to the will. As heretofore noted, Article V thereof provides, in essence, all the residue and remainder of testator's estate, real or personal, is bequeathed to Mary Berns (spouse) provided she survive testator. By reason of the fact Mary did so qualify (and the children had been effectively disinherited), fee simple title in and to the farm vested in her as sole residuary devisee, upon testator's death, subject to payment of debts and estate administration costs. See *In re Estate of Clausen*, 258 Iowa 324, 329, 139 N.W.2d 196 (1965), and citations.

Noticeably, operation of the instantly involved residuary clause effectively forecloses application of any presumption against intestacy.

■ VI. Moreover, investiture of the fee, as aforesaid, was not adversely affected by the provisions of Article III of the will, previously quoted, which accorded Mary Berns a conditional right only in the farm. See *Robertson v. Eastern Long Island Hospital*, 28 Ill.2d 483, 192 N.E.2d 895, 899 (1963); 80 Am.Jur.2d, Wills, §§ 1539–1542; 96 C.J.S. Wills § 717, at 99.

Trial court properly held the questioned mortgage, given by defendants Roy Eulberg and Mary Jane Eulberg to Elkader Production Credit Association, constituted a validly extant encumbrance on the instantly involved farm property.

AFFIRMED.