In the Matter of the Estate of Ruth Marion OXLEY, Deceased, Farmers State Bank, Marion, Iowa, Executor of the Estate, Plaintiff-Appellee,

v.

George A. OXLEY, Kathleen Eacutt, Ruth E. Oxley,
Defendants-Appellees,

and

Covenant Presbyterian Church of Long Beach Unified School District,
Defendant,

and

John Wayne Oxley, Clela O. Blankmeyer,
Defendants-Appellants.

No. 59664.

Supreme Court of Iowa.

Jan. 18, 1978.

Patrick M. Roby and W. R. Shuttleworth, of Shuttleworth & Ingersoll, Cedar Rapids, and James H. Counts and Stephen J. Briggs, of Morton, Reed & Counts, St. Joseph, Mo., for defendants-appellants John Wayne Oxley and Clela O. Blankmeyer.

Winfield A. White of White, Stone & Horan, Marion, for plaintiff-appellee.

David A. Elderkin of Wadsworth, Elderkin, Pirnie & Von Lackum, Cedar Rapids, for defendants-appellees.

Heard before MOORE, C. J., and MASON, RAWLINGS, REYNOLDSON and HARRIS, JJ.

MASON, Justice.

Defendants, John Wayne Oxley and Clela O. Blankmeyer, appeal from an adverse decree of the trial court in an action brought by the executor of the estate of Ruth M. Oxley seeking construction of the last will and testament of the decedent. The appeal presents the question whether four certificates of deposit listed in Schedule C of the probate inventory of the decedent's estate should be included in the bequest of "stocks, bonds and/or securities" in paragraph six of decedent's last will and testament or whether they should be a part of the rest, residue and remainder of the estate which would be distributed according to paragraph seven of the will and paragraph five-A of the first codicil.

July 12, 1975, Ruth Marion Oxley, then a resident of Marion, Iowa, died testate. Her will dated April 21, 1964, her first codicil dated September 28, 1965, and her second codicil dated August 15, 1967, each of which was executed while she was a resident of Long Beach, California, have all been admitted to probate in the Linn District Court. When her executor, Farmers State Bank, Marion, Iowa, reached the point at which distribution under the will could commence, a dispute arose concerning proper distribution.

Miss Oxley had never married and, at the time of her death, her only surviving heirs at law were two nephews, John Wayne Oxley and George A. Oxley, and two nieces, Clela O. Blankmeyer and Kathleen Eacutt. The decedent was also survived by her sister-in-law, Ruth E. Oxley.

As indicated, the executor filed a petition in equity in the Linn District Court seeking construction of the sixth paragraph of the will. Defendants, George A. Oxley, Kathleen Eacutt, and Ruth E. Oxley, answered and filed a motion for summary judgment. Defendants, John Wayne Oxley and Clela O. Blankmeyer, also answered and filed a motion for summary judgment.

At the hearing on the motions for summary judgment the parties agreed the court should treat the motions and the support thereto as arguments relating to the petition for construction. The parties later filed briefs in support of the arguments raised in their motions. After consideration of these arguments, the trial court ruled in favor of the position of the executor and of defendants, George A. Oxley, Kathleen Eacutt and Ruth E. Oxley.

The provisions of the will relevant hereto are as follows:

"SIXTH

"I hereby give, devise and bequeath all of my *stocks, bonds and/or securities* owned by me at the time of my demise, wheresoever situated and howsoever held unto the following named persons, or to the survivor of them, in equal shares, share and share alike:

"1. To my nephew, GEORGE A. OXLEY, of Cheyenne, Wyoming;

"2. To my nephew, JOHN WAYNE OXLEY, of St. Joseph, Missouri;

"3. To my niece, CLELA BLANKMEYER, of Waukegan, Illinois;

"4. To my niece, KATHLEEN EACUTT, of Lakewood, California.

"SEVENTH

"I give, devise and bequeath all of the rest, residue and remainder of my estate, both real and personal, howsoever held and wheresoever situated unto my beloved brother and sister-in-law, GEORGE C. OXLEY and RUTH E. OXLEY, in equal shares or to the survivor among them.

"EIGHTH

"In the event that both my beloved brother and sister-in-law, GEORGE C. OXLEY and RUTH E. OXLEY, shall have

predeceased me, I hereby give, devise and bequeath to my beloved niece, KATHLEEN EACUTT or her legal heirs, all of the rest, residue and remainder of my estate, both real and personal, however held and wherever situated." (Emphasis supplied).

In a first codicil to her will, testatrix, by insertion of a new paragraph entitled fifth-A, made a bequest of $500.00 to the Covenant Presbyterian Church of Long Beach, California, and a bequest of $1,000.00 to the Long Beach Unified School District, Long Beach, California, and changed the executor of her will. By a second codicil she designated her brother George C. Oxley as her executor. Her brother predeceased her and the Marion State Bank was named executor. No issues are raised as to these codicils.

At her death testatrix left a total gross estate of $97,827.94. The total estate assets may be summarized as follows:

1. Checking account in Farmers
   State Bank _____ $    800.37

2. Savings account in Farmers
   State Bank _____ $ 3,887.38

3. Benefits payable from California
   Teachers Retirement System __ $ 2,000.00

4. Life insurance _____ $10,632.37

5. Three savings certificates
   of deposit with Marion
   State Bank _____ $33,877.82

6. One savings certificate with
   Security Savings and Loan
   Association, Marion, Iowa
   (formerly Linn County Savings
   and Loan Association, Marion,
   Iowa) _____ $24,295.12

7. Shares of stock in various
   corporations _____ $22,334.88

All parties hereto agree the shares of stock valued at $22,334.88 (Item 7) pass to the nephews and nieces through the sixth paragraph of the will. At issue here is the distribution of the four savings certificates of deposit (Items 5 and 6) totaling $58,-172.94.

Defendants, John Wayne Oxley and Clela O. Blankmeyer, contend the four certificates of deposit pass through the sixth paragraph, of the will because of their interpretation of the phrase, "stocks, bonds and/or securities." The executor and defendants, George A. Oxley, Kathleen Eacutt and Ruth E. Oxley, interpret the phrase differently and consequently contend the certificates pass through the seventh paragraph of the will.

The trial court, after consideration of the motions for summary judgment, the support for these motions and the briefs of the parties, ruled in part as follows:

"  *    *

"Three of the certificates of deposit referred to are entitled 'Savings Certificate of Deposit' in the Farmers State Bank, Marion, Iowa, and state that the testatrix 'has deposited in this bank  *  *  *  the sum of' and then stated the amount of the deposit. There is a further provision that the deposit is 'not subject to check' and not negotiable. Those certificates further provide for interest, renewal, withdrawal penalties, etc. The other certificate is designated a savings certificate  *  *  *. This certificate also provides for interest, renewal, withdrawal penalties, etc.

"While it is not particularly significant of anything, the certificates of deposit, as well as all of the stocks and bonds listed in the inventory in this estate, were purchased long after the execution of the will and the codicil, and the certificates of deposit were in fact issued to the conservator of the testatrix's property.

"  *    *    *

"The Court finds that when the testatrix said in Paragraph Sixth that she wanted two named nephews and two named nieces to have in equal shares 'all my stocks, bonds and/or securities owned by me at the time of my demise,' she meant the shares of stock listed in Schedule B of the inventory, the kind of stocks and bonds and securities that one buys in the open market, not money on deposit in banks and savings and loan associations. The Court finds that the testatrix by using the language she employed in Paragraph Sixth of her will intended to

restrict the meaning of 'securities' to those of the same nature as stocks and bonds under the general legal principle that where words of a general nature follow or are used in connection with the designation in a will of particular objects or classes of persons or things, the meaning of the general words will be restricted to the particular designation, under the rule of 'ejusdem generis.'

"The Court finds that the testatrix intended to bequeath the four certificates of deposit referred to according to the provisions of Paragraph Fifth-A of the codicil and Paragraph Seventh of her Last Will and Testament."

The issues as framed by the parties are as follows:

1. Is the phrase, "stocks, bonds and/or securities," ambiguous so that rules of construction of wills must be used to determine the intent of the testatrix?

2. Does the term "securities" include savings certificates of deposit?

3. Does application of the rule of *ejusdem generis* to the phrase "stocks, bonds and/or securities" result in a finding the term "securities" is limited in meaning to such securities as would be bought in the open market?

■ I. In this equitable action our review is de novo. Section 633.33, The Code; *Larson v. Anderson,* 167 N.W.2d 640, 642 (Iowa 1969); *Houts v. Jameson,* 201 N.W.2d 466, 468 (Iowa 1972). "While weight will be given to findings of trial court this court will not abdicate its function as triers de novo on appeal. * * * [citing authority]." *In re Marriage of Williams,* 199 N.W.2d 339, 346 (Iowa 1972).

In a case of this type our review is guided by certain well-established legal principles. This court recently repeated the following principles in *Baldrige v. Greiner,* 255 N.W.2d 114, 115 (Iowa 1977):

"The legal principles upon which this case must be decided are well settled. They have been frequently announced by us, most recently in *In Matter of Estate of Kruse,* 250 N.W.2d 432, 433 (Iowa 1977), where we said:

" 'The basic rules governing our consideration of this will are: (1) the testator's intent is the polestar and must prevail; (2) the intent must be gathered from a consideration of all the language of the will, the scheme of distribution, and the facts and circumstances surrounding the making of the will; and (3) technical rules of construction should be resorted to only if the language of the will is clearly ambiguous or conflicting or testator's intent is for any reason uncertain.' * * * [Emphasis omitted]. * * * [citing authorities].

"Somewhat earlier we said in *In Re Estate of Syverson,* 239 Iowa 800, 804–805, 32 N.W.2d 799, 801 (1948):

" 'The intention of the testator must be ascertained from the will, itself, and from nothing else, if its language is plain and unambiguous. Where the intention is thus clearly and unequivocally expressed there is no need for judicial construction, or extrinsic evidence, and all other rules of testamentary interpretation are inapplicable and must yield. The intention must be that which is manifest from the express language of the will or by necessary implication.' "

■ II. With the foregoing principles in mind we turn first to a consideration of whether the term "securities" as used in the phrase, "stocks, bonds and/or securities," is ambiguous. Ambiguous was defined by this court in *McCarthy v. McCarthy,* 162 N.W.2d 444, 448 (Iowa 1968), where the court stated: "In *Roberts v. Roberts,* supra, 231 Iowa 394, 1 N.W.2d 269 we held the word 'ambiguous' means ' * * * "Of doubtful nature or meaning; uncertain; having a double meaning; open to various interpretations; equivocal." ' * * * *[citing authority]."

In our opinion the term "securities,", in the context of the phrase at issue, is ambiguous. The arguments made and authorities cited by the parties convince us there is uncertainty as to its meaning. Research indicates various courts have grappled with its meaning and have come to widely diver-

gent conclusions. See for example 38A Words and Phrases, pp. 139–180; Annot., 27 A.L.R.3d 1386–1397.

III. At this point it is necessary to turn to the second issue framed by the parties, whether the term "securities" standing alone includes within its meaning savings certificates of deposit. All parties cite *Huckabee v. Hansen,* 422 S.W.2d 606 (Tex. Civ.App.1967), 27 A.L.R.3d 1380, as a guide for the court's determination of this issue.

In *Huckabee,* 422 S.W.2d at 608, the court determined the meaning of the term "securities" as follows:

"In *Avis v. First Nat. Bank of Wichita Falls,* 141 Tex. 489, 174 S.W.2d 255, p. 258, the court says:

" 'Another rule in the construction of wills, which merits serious consideration, is stated by Corpus Juris, vol. 69, p. 80. Wills, § 1136, as follows: " * * * where the meaning of the language used in the will has been settled by usage and sanctioned by judicial decision, it is presumed to be used in the sense that the law has given to it, and should be so construed, unless the context of the will shows a clear intention to the contrary." '

"Black's Law Dictionary, Fourth Edition, defines 'Securities' as 'Evidences of debts or of property. * * * [citing authority]. Evidences of obligations to pay money or of rights to participate in earnings and distribution of corporate, trust, and other property. * * * [citing authority].'

"We copy from 79 Corpus Juris Secundum, p. 948, Security; Securities, as follows:

" 'The words "security" and "securities" usually are not applied to money on deposit in a national bank or trust company, but are applied to deposits in savings banks, and also to pass books evidencing savings deposits and to certificates of deposit. While it has been said that securities are mere choses in action, the word "securities," in its ordinary acceptation, and in its broadest sense, includes bonds, certificates of stock or deposit, notes, and bills of exchange as stated above, and other promises

to pay money, and other evidences of debt, of indebtedness, or of property, and not mere choses in action.'

" * * * *

"We conclude from a study of these and other authorities that in its broadest sense, the term 'securities' can mean any and all evidences of debt, * * *.

"From the above, we conclude that the two savings accounts in question were at the time of her death, securities. If testatrix had devised to appellee 'all securities owned by me at the time of my death' with no other circumstances to show a contrary meaning, the savings accounts, in our opinion, would have passed under such bequest."

Appellants cite the 1933 Securities Act, 15 U.S.C.A., section 77b, the 1934 Securities Exchange Act, 15 U.S.C.A., section 78c and section 502.3, The Code of Iowa, and numerous cases as further support for their argument certificates of deposit are evidences of debt and, therefore, are securities.

From the cases and other sources cited and studied the court finds the term "securities" standing alone includes within its meaning certificates of deposit. This finding is, however, not dispositive of the case. In light of our previous finding the term "securities" is ambiguous, we must now apply technical rules of construction to determine the intention of the testatrix when she used the term.

IV. A major portion of the argument of the parties is devoted to the applicability of the rule of construction known as ejusdem generis to the phrase at issue here. The trial court, as urged by appellees, applied the rule to the phrase. Appellants contend it is not applicable.

The rule and a caution as to its use were explained as follows by this court in the case *In re Estate of Chadwick,* 247 Iowa 1050, 1056, 78 N.W.2d 31, 35:

" * * * The principle of ejusdem generis is that general words following the enumeration of particular things are applicable only to things of the same general nature. However, it is merely a rule of

construction to aid in ascertaining the meaning of a writing."

Appellees contend the general phrase "and/or securities" following the enumeration of the particular phrase, "stocks and bonds," limits the meaning of securities to those securities of the same general nature as stocks and bonds. In other words, because stocks and bonds are properties which are subject to everyday transactions on the open market, the term securities is thereby limited to such securities as are subject to everyday transactions on the open market. The trial court employed the same reasoning in reaching its conclusion the certificates of deposit were not the type of securities the testatrix intended to be distributed under the sixth paragraph of her will.

Appellants assert the use of the term "and/or" between the two phrases indicates the testatrix intended to differentiate between the two types of properties, stocks and bonds on the one hand and securities on the other. Appellants assert this differentiation makes the rule of ejusdem generis inapplicable under the explanation of the rule in Black's Law Dictionary Rev.Fourth Ed., p. 608. It is there stated: "* * * Nor does it [the rule of ejusdem generis] apply when the context manifests a contrary intention."

Appellees' application of the rule of ejusdem generis to the phrase at issue here is based on the *Huckabee* case, 422 S.W.2d at 608–609. There it was decided the words "stocks and bonds" preceding the words "and other securities" limited "securities" to those of the same general nature as "stocks and bonds." We do not find the case to be of any precedential value because the phrase in the present case is not the same. See *In re Estate of Zang,* 255 Iowa 736, 739, 123 N.W.2d 883, 885.

As stated, appellees relied on the principle of ejusdem generis in support of their position; the appellants challenged application of the rule to the present facts; and the trial court recognized the principle and relied on it in reaching its determination. However, in our opinion a better rule to determine the intention of the testatrix

is stated in *In re Estate of Chadwick,* 247 Iowa at 1054, 78 N.W.2d at 34, in this manner:

" * * * Where the effect of the words in their technical and broader meaning would be to frustrate another bequest, courts have generally construed them in their more restricted sense. * * * [citing authorities]. The reason frequently given is based upon the inference that testator intended each provision of the will to be effective."

As defendant-appellees George A. Oxley, Kathleen Eacutt and Ruth E. Oxley point out, the seventh paragraph, the residuary clause, would be nullified if we find the certificates pass under the sixth paragraph. This is readily apparent by the following quote from their brief:

" * * * Of the remaining $17,320.12, $1,500.00 would cover the charitable bequests to the Covenant Presbyterian Church of Long Beach, California and the Long Beach Unified School District; $2,500.00 would pay for the estimated debts of the testator; $1,856.56 would go to the corporate executor as an attorney's fees (see Section 633.197, 1975 Code of Iowa); * * * and possibly $150.00 would cover the court costs of the estate. Additionally, *all* of the federal estate tax (which would be fairly sizable as there is no surviving spouse) would be paid out of the remainder (see Section 633.449, 1975 Code of Iowa), as well as the state inheritance tax on any amounts left over going to residuary beneficiary Ruth E. Oxley. Indeed, it does not take an estate expert to see that any amount of money finally left over and passing to Ruth E. Oxley would be miniscual [sic] at best and non-existent at worst." (Defendants' brief, p. 7). (By very rough calculations the total Ruth E. Oxley would get is $4,550.00 out of the $97,000.00 estate).

It is obvious from the terms of endearment with which the testatrix described her brother and sister-in-law in the seventh paragraph of the will and from the fact she named her brother as her executor, the testatrix did not intend to nullify her

bequest to them by providing for the distribution of two-thirds of her estate through the sixth paragraph of her will. The court concludes the testatrix intended to pass only stocks and bonds and securities of similar kind through the sixth paragraph of her will. She did not intend her savings certificates of deposit to pass thereby.

Appellants urge this court to apply here the rule the law favors bequests in conformity with laws of descent and distribution. *Watson v. Manley*, 257 Iowa 92, 130 N.W.2d 693, is cited for this proposition. While the *Watson* case is indeed decided on the basis of that proposition, it is also true the case is not only distinguishable from the case at hand but it also provides support for the rule on which we rely here to determine the testatrix' intent.

In *Watson* this court was concerned with the contention the major part of the testator's estate, after allowance for other bequests, should be distributed to charities instead of to the natural objects of his bounty, his granddaughters. The court used the descent and distribution rule because it was convinced the testator did not intend to cut his granddaughters out of the major part of his estate.

In the present case we are not confronted with such a situation. Here the problem is not whether distribution of the estate was intended to be made to strangers or to the natural objects of a testatrix' bounty. Here the problem is whether distribution was intended to be made to all of one group of natural objects of testatrix' bounty or part to each of two groups of natural objects of the testatrix' bounty. Thus the case is distinguishable.

In *Watson* this court relied primarily upon the rule which we use in the case at hand. This was made clear early in the opinion when the court stated:

"The intent of the testator is to be ascertained from the terms of the will in connection with other legitimate sources of information. *The law favors a construction which will give some effect to every provision contained therein,* and here testator's selection of granddaughters as devisees of the remainder, should the balance of the farm sale exceed 25 percent of his estate, is in accord with the thought that testator recognized the just claims of those with natural expectations on his bounty and the legislative requirement aimed to prevent the giving of an undue proportion of one's estate to charity by will when near relatives in the opinion of the lawmakers have a better claim." (Emphasis supplied). *Watson,* 257 Iowa at 95, 130 N.W.2d at 695.

▮ Appellants contend it was obvious testatrix intended all her intangible property to be distributed through the sixth paragraph of her will. They argue stocks, bonds, securities and certificates of deposit are all intangible property. They maintain since stocks and bonds are distributed under the sixth paragraph, other intangible property, namely certificates of deposit, should also be distributed through that paragraph.

▮ This contention is without merit. Were we to hold as appellants urge, a completely unreasonable and unintended distribution would occur whenever a testator intended only stocks and bonds to be distributed under a particular provision in a will. While it is true stocks and bonds are intangible property, *Crane Co. v. City Council of Des Moines,* 208 Iowa 164, 166, 225 N.W. 344, 345, 76 A.L.R. 801, the meanings of these words do not encompass certificates of deposit. See Black's Law Dictionary, Rev.Fourth Ed., pp. 224–225, 1586–1588. A testator could not, as appellants urge, devise only stocks and bonds and intend at the same time to devise also certificates of deposit.

Clearly, if testatrix had intended all her intangible property to be distributed under the sixth paragraph of her will, it would have been easier and surer to have so stated in that paragraph. This she did not do and clearly did not intend to do so.

▮ The one remaining issue before us is raised by the fact the trial court determined, by use of the rule of ejusdem generis, the certificates of deposit passed under paragraphs five–A of the codicil and seven

of the will. While the result reached by the trial court was correct it was for the wrong reason.

This court is not required to adopt trial court's premise in order to sustain its conclusion if any proper ground appears in the record even though the trial court's ruling is based on a different ground. See *Krohn v. Judicial Magistrate Appointing Com'n.,* 239 N.W.2d 562, 563 (Iowa 1976); *Dealers Warehouse Co. v. Wahl & Associates,* 216 N.W.2d 391, 394 (Iowa 1974); *State ex rel. Turner v. United-Buckingham F. L., Inc.,* 211 N.W.2d 288, 289–290 (Iowa 1973). This is true even though the parties who were successful in the trial court do not seek to uphold the ruling on the grounds adopted by this court. See *Newmire v. Maxwell,* 161 N.W.2d 74, 80 (Iowa 1968).

The trial court, is therefore

Affirmed.